**Matthew C. GARY, Plaintiff,**

v.

**Glenn W. NICHOLS, Director of the Department of Employment, State of Idaho, Defendant.**

Civ. No. 1–75–122.

United States District Court, D. Idaho.

March 9, 1978.

Louis Garbrecht, III, Idaho Legal Aid Services, Inc., Twin Falls, Idaho, for plaintiff.

R. Lavar Marsh, Deputy Atty. Gen., Roger B. Madsen, Asst. Atty. Gen., Boise, Idaho, for defendant.

Before KOELSCH and ANDERSON, Circuit Judges, and McNICHOLS, Chief Judge.

## MEMORANDUM DECISION

McNICHOLS, Chief Judge:

Plaintiff worked as a general maintenance man for Western Beverage Corporation in Twin Falls, Idaho, until October 5, 1974, on which date his employment terminated. On February 10, 1975, he applied for and was subsequently granted unemployment compensation benefits by the Idaho Department of Employment in accordance with the Idaho Employment Security Law, Idaho Code §§ 72–1301 to –1379, and the regulations promulgated thereunder. Weekly benefits were paid in the sum of $60.00 per week for the weeks ending February 22, 1975, and March 1, 1975.

On February 26, 1975, the employer filed a timely request for a redetermination of plaintiff's eligibility for benefits, alleging that the plaintiff had voluntarily terminated his employment without good cause. A form-letter notice, with the employer's request attached, was duly sent to Gary at his Twin Falls address, advising him of the employer's request for redetermination and requiring him to reply "as soon as possible". The form was designed to be completed and returned to the agency office prior to March 10, 1975.

Unfortunately, the plaintiff was away from his home seeking employment and his reply was not received at the agency office until March 18, 1975. On March 13, 1975, a redetermination was made, holding Gary ineligible for benefits and requiring reimbursement to the agency for the two initial payments.

A timely appeal from the initial redetermination was filed on March 20, 1975, and a final redetermination hearing before a senior appeals examiner was set for April 18, 1975. After several continuances, the appeal hearing was held on June 3, 1975, at which all parties were in attendance and represented by counsel. On June 13, 1975, the appeals examiner issued his decision, affirming the initial redetermination of ineligibility; he found that the claimant had indeed left his employment voluntarily and without good cause. This holding is not now under attack, and for our purposes is considered to be a correct determination of the issue.

Although additional administrative appeal to the Idaho Industrial Commission was available to the plaintiff, he did not pursue the same, and on July 23, 1975, filed this action, alleging jurisdiction by virtue of 28 U.S.C. §§ 1343(3) and (4), and seeking

*inter alia*: (1) relief under 28 U.S.C. §§ 2201 and 2202 declaring the Department's rules and regulations relating to redetermination unconstitutional; (2) convention of a three-judge panel pursuant to 28 U.S.C. §§ 2281 and 2284[1] in order to enjoin enforcement of the Department's rules and regulations relating to redetermination; and (3) an order requiring defendant to pay plaintiff the sum of $480 in damages, costs and attorney's fees.[2]

The requisite notification and certificate for a multijudge panel was filed, and an order constituting the panel was entered. Subsequently, the plaintiff dismissed the following allegations and causes of action:

1. All claims for money damages;
2. All claims in the Second Cause of Action, Paragraph 26, regarding failure to provide a hearing before an impartial tribunal;
3. All claims in the Third Cause of Action, Paragraph 29, regarding failure to provide a fair hearing before an impartial tribunal; and
4. All allegations and claims in the Fifth Cause of Action.

In the present posture of the case, the plaintiff's causes of action are respectively: (1) that the redetermination procedures are in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, in that they provide for termination of unemployment benefits without first affording the recipient a pretermination evidentiary hearing; (2) that the delay from the time of termination to the date of the final redetermination hearing, approximately 87 days, violates the due process clause of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983; (3) that the termination of benefits prior to a hearing violates 42 U.S.C. § 503(a)(1) and 42 U.S.C. § 1983, in that the administration

of claims is not calculated to insure full payment of benefits when due; and (4) that the granting of repeated continuances of the final redetermination hearing was unreasonable, arbitrary and a violation of 20 C.F.R. § 650.1(b) and 42 U.S.C. § 1983.

As jurisdiction was properly invoked under 28 U.S.C. §§ 1343(3) and (4), as a three-judge court was properly convened, and as the plaintiff's claims are not moot, we directly address the plaintiff's specific constitutional and statutory claims.

### I.

A. Plaintiff's first cause of action comprises essentially two issues: (1) whether due process requires a pretermination evidentiary hearing before the recipient of unemployment benefits may no longer receive those benefits; and (2) if not, whether due process mandates more than an oral interview before an unemployment claimant may have his benefits terminated. We decide both issues in the negative.

The analysis of a due process challenge is two-fold: First, whether the interest asserted is within the Fourteenth Amendment's protection of "liberty" or "property"; and if so, what process is "due" in the particular context. *Smith v. Organization of Foster Families*, 431 U.S. 816, 838–39, 847, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977).

■ It is clear and virtually conceded that the claimant's asserted interest in continuing to receive unemployment benefits is a protected one. *See Graves v. Meystrik*, 425 F.Supp. 40, 47 (E.D.Mo.1977), *aff'd without opinion*, 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977). Not unlike wages and welfare benefits, unemployment benefits are specific, more than expectational, and conferred by existing statutes, rules

---

**1.** Sections 2281 and 2284 have subsequently been repealed and amended. Act of August 12, 1976, Pub.L. No. 94–381, §§ 1 and 3, 90 Stat. 1119.

**2.** The complaint was accompanied by a summons with the proper court heading and it was served. However, the body of the summons notified defendant that a complaint had been

filed against him "in the District Court for the Fifth Judicial District of the State of Idaho in and for the County of Twin Falls". In his answer defendant Nichols alleges the summons was defective, but he never pursued the matter and has continued to appear and participate in these proceedings.

and regulations. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Thus it is the second prong, the process due, that is the gravamen of plaintiff's complaint and the major issue before us.

In *Fusari v. Steinberg,* 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975), the Supreme Court came within a breath of disposing of this issue, for one of the questions was whether the Connecticut seated-interview procedures for determining unemployment eligibility were constitutionally defective in failing to provide a pretermination hearing in accordance with the standards set forth in *Goldberg.* However, while the matter was pending, the Connecticut legislature enacted major remedial revisions in their unemployment benefit statutes, and the Court vacated and remanded.

■ As the Supreme Court, then, has not specifically addressed the issues *sub judice,* we must apply the Court's test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Noting that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances", and "is flexible and calls for such procedural protections as the particular situation demands", *id.* at 334, 96 S.Ct. at 902, *citing Cafeteria & Rest. Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), and *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the *Mathews* Court said that exegesis of their prior decisions indicates three distinct factors that must be considered and weighed before the specific dictates of due process may be found:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute proce-

dural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903, *quoted in Smith v. Organization of Foster Families,* 431 U.S. at 848–49, 97 S.Ct. 2094 (1977), and *Dixon v. Love,* 431 U.S. 105, 112–13, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).

As plaintiff's private interest in this case is not an interest in receiving unemployment benefits as such, but only an interest in continuing to receive unemployment benefits between an initial redetermination after something less than a full evidentiary hearing and a final redetermination after a full hearing by an appeals examiner, the nature of and weight to be given such an interest are found only after our careful examination of *Goldberg,* upon which plaintiff relies, and *Mathews,* upon which defendant relies. We find *Mathews* controlling.

In *Goldberg* the Court held that due process did require a pretermination evidentiary hearing before termination of welfare benefits to families with dependent children. Focusing on the need of the welfare recipients, and the overwhelming private interest at stake, the Court wrote:

> "For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. Thus the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy." *Goldberg,* 397 U.S. at 264, 90 S.Ct. at 1018. (Emphasis, footnotes and citation omitted.)

In *Mathews*, however, the Court found that no pretermination evidentiary hearing was required by due process before termination of disability benefits. Distinguishing the nature of the private interest in *Goldberg*, the *Mathews* Court said:

> "Eligibility for disability benefits, in contrast [to welfare benefits], is not based upon financial need. Indeed, it is wholly unrelated to the worker's income or support from many other sources, such as earnings of other family members, workmen's compensation awards, tort claims awards, savings, private insurance, public or private pensions, veterans' benefits, food stamps, [and] public assistance . . . ." *Mathews*, 424 U.S. at 340–41, 96 S.Ct. at 905. (Footnotes omitted.)

Unemployment benefits are more closely akin to *Mathews'* disability benefits, for unemployment benefits are not based on financial need.[3] As another three-judge court has said in a nearly identical challenge to Missouri's want of a pretermination evidentiary hearing:

> "Here, as in the case of disability benefits, there is a '. . . possibility of access to private resources [and], other forms of government assistance will become available where the termination of disability benefits places a worker or his family below the subsistence level.' " *Graves*, 425 F.Supp. at 48, *quoting in part*, *Mathews*, 424 U.S. at 342, 96 S.Ct. 893.

Having determined the nature of the claimant's interest as important but non-quintessential, we must weigh it with the other two factors. Considering first the government or public interest, it must first be noted that although cost alone is not a controlling factor, the additional administrative costs concomitant to a pretermination evidentiary hearing would be substantial in this case.

> "[S]uch a procedure would require that the claimants continue to receive benefits until a decision was rendered in the pre-termination hearing. While statistics are not available to show the percent of claimants whose unemployment benefits are terminated and then file appeals, it is only logical to assume that if the claimants continue to receive benefits pending the pre-termination decision, an increased percentage would request such a review so as to receive the additional benefits. These 'over payments' could, as the plaintiffs contend, be offset against the claimant's benefits when next he receives them, but not all persons apply regularly enough to allow the state to recoup these increased costs." *Graves*, 425 F.Supp. at 49.

In addition to the cost of recoupment is the administrative cost of additional hearings or of only evidentiary hearings upon initial redetermination. Moreover, such evidentiary hearings would seriously jeopardize the rights of other unemployment benefits recipients to have their claims heard

---

3. Idaho Code § 72–1302(a) (1949), upon which plaintiff relies, is not to the contrary. That section provides in full:

> "As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and

by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own."

*Cf. Philbrook v. Glodgett*, 421 U.S. 707, 714, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975) (noting in another context that unemployment compensation programs are not administered upon need).

promptly. Redeterminations include re-evaluation of ineligibility upon a claimant's request as well as eligibility upon an employer's request. We are also not unaware of the interest of the contributors to the unemployment fund and of the integrity of the fund itself. *Cf. Ohio Bureau of Employment Serv. v. Hodory*, 431 U.S. 471, 490–91, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977).

■ In short, the government and public interest in the orderly, efficient and accurate administration of limited agency resources, the prevention of paying benefits to ineligible recipients with the necessarily attendant recovery costs, the other recipients' interest in prompt redeterminations, and the employers' and public interest in protecting the fund, simply outweigh the private interest in maintaining an uninterrupted flow of unemployment benefits between an initial and a final redetermination.

The risk of an erroneous deprivation of the claimant's limited interest through the procedures used and the probable value of additional or substitute safeguards are more difficultly assessed than the private or public interest, for a major constituent of an evaluation of an unemployment claim, as in this case, may be the "fault" of the claimant and the lack of "good cause" for a claimant's termination of employment. That is, when the criteria by which termination is to be based are subjective rather than objective, possibly rendering credibility crucial, greater due process may be required, including, perhaps, a pretermination evidentiary hearing. *Compare Goldberg*, 397 U.S. at 269, 90 S.Ct. 1011 (witnesses' credibility significant) *and Elliott v. Wein-*

*berger*, 564 F.2d 1219, 1232–34 (9th Cir. 1977) (issue of waiver largely subjective determination) *with Dixon v. Love*, 431 U.S. at 115, 97 S.Ct. 1723 (1977) (license revocation based upon objective administrative regulations) *and Mathews*, 424 U.S. at 343–45, 96 S.Ct. 893 (disability benefits based upon largely objective medical affidavits).

The terminations in both *Goldberg* and *Elliott*, however, were based solely on written submissions. Although termination of unemployment benefits may often require a determination of fault,[4] and hence may often be subjective, termination of unemployment benefits in Idaho are preceded by the oral interview procedure. Unlike the procedures utilized in *Elliott* for recouping alleged overpayments to old-age and disabled social security beneficiaries, found to violate due process, the decisionmaker in the Idaho Department of Employment *does* have an opportunity to "see the person, size up the testimony, and . . . question the individual about the circumstances involved". *Elliott*, 564 F.2d at 1232. Moreover, there is "adequate opportunity for the claimant to communicate his case to the decisionmaker", *id.* at 1233, and even to mold his oral presentation in light of the reasons given in the form letter mailed before the interview and the redetermination.[5] *See Mathews*, 424 U.S. at 346, 96 S.Ct. 893.

Nevertheless, claimant argues that the oral interview is deficient in that there is a high reversal rate of the initial redeterminations, a lengthy delay between the initial oral interview and the final evidentiary hearing, and lack of reasonable and ade-

---

**4.** Often, too, no fault need be determined, as when a claimant indicates he is a student and when students are not eligible to receive unemployment compensation. *See, e. g., Graves, supra.*

**5.** Both plaintiff's Brief in Support of Motion for Summary Judgment on the First and Third Causes of Action and plaintiff's Trial Brief said that the notice mailed to him on March 4, 1975 indicated claimant's right to request a redetermination interview. In his Post-Trial Brief, however, he contends that it did not, and that the notice indicated only the employer's right

to an interview and the claimant's right to submit a written statement. Since only the invalid Claims Taking Procedure Manual, *see* footnote 7, *infra,* and neither the Idaho Employment Security Law nor the Facts Booklet, provided for or gave notice of the oral interview, plaintiff now claims complete lack of notice of the oral interview procedure. We do not so read the letter sent to plaintiff; plaintiff's earlier assertions are correct. Even if we were to find that plaintiff had no notice of the *form* of redetermination, such lack of notice would not require a contrary result.

quate notice of an initial redetermination. Going largely to the risk of erroneous deprivation, these arguments do not persuade us. The oral interview procedure is constitutionally sound.

Using the defendant's answers to interrogatories, indicating the number of initial redeterminations appealed and the number of decisions reversing those redeterminations, plaintiff calculates a reversal rate approaching fifty percent. However, that calculated rate is of little assistance in evaluating a risk of erroneous deprivation. The weight to be given a reversal rate is directly proportional to the percent of initial redeterminations appealed, and insofar as there is no evidence before us of the total number of initial redeterminations or of the portion of initial redeterminations appealed, plaintiff's figures are meaningless. *Cf. Mathews*, 424 U.S. at 346–47, 96 S.Ct. 893.

The delay between the initial and final redetermination, although not meaningless, is *de minimus*. The average length of time between a request for an appeal and the actual date of a hearing was about three weeks for 1976, and the examiners' decisions were generally rendered within weeks of the hearing. This average delay was similar for previous years. Even if the average delay were much longer, the risk of an erroneous deprivation is not outweighed by the less than essential private interest and the overriding administrative and public interests. Thus, although "the possible length of wrongful deprivation of unemployment benefits is an important factor in assessing the impact of official action on the private interests", *Fusari*, 419 U.S. at 389, 95 S.Ct. at 540, the length here is not less than adequate. In fact, it is difficult to conceive a substantially shorter delay. Plaintiff's authority is inapposite, for all found longer *average* delays. *See California Dept. of Human Resources Development v. Java*, 402 U.S. 121, 128 n. 6, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971) (49-day average); *Steinberg v. Fusari*, 364 F.Supp. 922, 934 (D.Conn.1973), *vacated*, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1974) (over 100-day average); *Wheeler v. Vermont*, 335 F.Supp. 856, 861 (D.Vt.1972) (37.5-day average).

Indirectly, the constitutionality of the oral interview as an initial redetermination procedure has been determined by the Supreme Court in *Torres v. New York State Dept. of Labor*, 333 F.Supp. 341 (D.C.1971), *aff'd without opinion*, 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972). The claimant in that case first went to the Supreme Court after the Southern District of New York had held that the New York unemployment compensation programs did not require a pretermination hearing and that the oral interview system was constitutional. *Torres v. New York State Dept. of Labor*, 321 F.Supp. 432 (S.D.N.Y.1971). However, the Supreme Court remanded for reconsideration of its newly-delivered opinion in *Java, supra*. *Torres*, 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971). Upon remand, the district court reiterated its position without alteration, and was summarily affirmed. Were it not for the admonition that summary affirmances adopt only the judgment and not the reasoning, *Fusari v. Steinberg*, 419 U.S. 379, 391, 95 S.Ct. 533, 42 L.Ed.2d 521 (1974) (Burger, C. J., concurring), *Torres* would be controlling and our own analysis unnecessary. However, we find the *Torres* reasoning persuasive, and that the Idaho procedures do not require something more than the oral interview at the initial redetermination stage.

Although Idaho's statutory scheme of notice and an opportunity to be heard are constitutionally sufficient, plaintiff also challenges the notice and opportunity under the facts of this case. After Western Beverage had alleged that Gary had terminated his employment without good cause and had requested a redetermination, the Department, on March 4, 1975, sent a form letter to Gary, advising him of the former employer's request, requiring Gary to designate whether an interview was desired,[6] and notifying him to complete the form and return it as soon as possible. A copy of the

6. *See* footnote 5, *supra*.

employer's actual redetermination request was enclosed. On March 10 or 11 the claimant left his home in Twin Falls, Idaho, the place to which the letter was sent, to seek employment in Boise. The letter from the Department was in his mail when he returned home, but unknown to Gary, the time for submitting a reply had expired March 10, 1975. Eventually he did reply, but not soon enough to request an oral interview or to give his input into the redetermination.

Idaho's Employment Security Law provides in pertinent part that

"a notice [of a redetermination] shall be deemed served if delivered to the person being served or if mailed to his last known address; service by mail shall be deemed complete on the date of mailing." Idaho Code § 72–1368(e) (Supp.1977).

In the absence of valid Departmental rules,[7] the plaintiff by statute must be deemed to have received notice of the redetermination on March 4, 1975, the stipulated date of mailing. Plaintiff alleges that he did not receive notice until March 10, the date he contends the mail was delivered, or March 11, the date plaintiff arrived home from Boise and reviewed his mail. To argue that March 11 is the effective date of notice is frivolous because such a rule would allow one, by not reading his mail, to avoid timely service in every circumstance. Assuming further the validity of the March 10 date, which was the final date for response allowed by the Department in this case, the plaintiff still had available to him sufficient notice for a timely response on the same day.

In *Fouste v. Department of Employment*, 97 Idaho 162, 540 P.2d 1341 (1975), an Idaho Supreme Court case factually equivalent to the instant case, addressing and upholding the notice provisions of Idaho Code § 72–

1368, the claimant, after having applied for unemployment benefits, left the area in pursuit of employment without notifying her local unemployment office.[8] The Department subsequently determined her ineligible and sent her a letter informing her of her right to request an initial redetermination within fourteen days. Although we are not bound by decisions of the Idaho Supreme Court, and although the case addressed the failure to appeal within a statutory limit rather than the failure to respond within a limit established by the Department, we find its reasoning applicable and persuasive.

"We are not dealing in this instance with a statute which denies a claimant a right to appeal a determination of ineligibility, or a statutory scheme which although allowing for an appeal, is so arbitrary or unreasonable as to amount to no appeal at all. What we are dealing with is a claimant who failed to properly utilize the clearly established procedures for appealing a determination of ineligibility. The appellate procedure with its prescribed time limitations for perfecting appeals is reasonable and violates no federal directive or law. The 14-day limitation strikes a necessary balance between a claimant's right to appeal and the Department's need to handle its affairs in an expeditious and efficient manner." *Fouste, supra* at 167–68, 540 P.2d at 1346–47.

As in *Fouste*, the notice and opportunity here were reasonable and adequate. The claimant's failure to utilize the procedures because he was unavailable to receive his mail does not precipitate a violation of due process. *See also Hacking v. Department of Employment*, 98 Idaho 839, 573 P.2d 158 (1978) (affirming dismissal of ap-

---

7. Only the procedures as outlined in the Idaho statutes may be considered, as the parties have stipulated that the rules set forth in the Department's Claims Taking Procedure Manual were not promulgated in accordance with Idaho Code §§ 67–5201 through 67–5218 (1949 & Supp.1977) and particularly § 67–5205(b), requiring availability in county law libraries. *See*

*Williams v. State*, 95 Idaho 5, 501 P.2d 203 (1972).

8. The facts booklet provided Gary by his local office specifically required unemployment compensation recipients to report any change of address to the local office, and renders the claimant's argument here even less persuasive than the claimant's argument in *Fouste*.

peal from initial redetermination decision to final redetermination hearing before appeals examiner, for failure to file within 14-day limit specified by Idaho Code § 72–1368 (Supp.1977)).

■ B. Plaintiff's final constitutional claim is that the repeated continuances resulting in an eighty-seven day delay between the time of the termination and the time of the actual hearing also violate procedural due process. Although unfortunate, such a delay is not so violative. A balance of the requisite considerations, especially the nature of the private interest, constitutionally dictates no other result. The stipulated facts suggest no possibility of an earlier determination, and the plaintiff does not suggest a feasible means whereby an earlier date, accessible to both parties, could have been made available in this case.

In short, plaintiff's first and second causes of action must fail. Neither the Idaho unemployment statutes and procedures as such, nor as applied to the claimant, violate the procedural due process guarantees of the Fourteenth Amendment. The interest of the claimant and the possibility of an erroneous deprivation of that interest, although more than minimal, are outweighed by the governmental and public need for administrative efficiency, minimal cost, and speedy resolution of claims. A pretermination evidentiary hearing is not required, the oral interview procedure is sufficient, and the procedures underlying appeals from determinations are fair and adequate. It may be regrettable that this plaintiff had to wait eighty-seven days for his final redetermination, but no more process is constitutionally due.

## II.

Plaintiff's statutory claims, embodied in his third and fourth causes of action, are

that the defendant's termination of plaintiff's benefits prior to an evidentiary hearing violates 42 U.S.C. § 503(a)(1) [9] in that the administration of claims is not "calculated to insure full payment of unemployment compensation when due"; and that the granting of the repeated continuances is unreasonable, arbitrary, and violative of 20 C.F.R. § 650.1(b).

A. For the alleged violation of 42 U.S.C. § 503(a)(1), plaintiff relies on *California Dept. of Human Resources Development v. Java, supra,* where the Court, in striking down the California procedure whereby an unemployment recipient's benefits were suspended pending appeal, said

"that the word 'due' in § 303(a)(1), when construed in light of the purposes of the Act, means the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions; any other construction would fail to meet the objective of early substitute compensation during unemployment. Paying compensation to an unemployed worker promptly after an initial determination of eligibility accomplishes the congressional purposes of avoiding resort to welfare and stabilizing consumer demands; delaying compensation until months have elapsed defeats these purposes." *Id.* 402 U.S. at 133, 91 S.Ct. at 1355.

The fatal flaw in the California procedure was the automatic suspension upon appeal from an initial eligibility determination. Accordingly, state procedures not incorporating such suspension do not contravene the Congressional intent in § 503(a)(1) of prompt administration of unemployment benefits. *See Graves, supra* (Missouri); *Torres v. New York State Dept. of Labor,* 333 F.Supp. 341 (1971) (New York); and

---

9. 42 U.S.C. § 503(a)(1) provides in part:

"(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

(1) Such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due . . . ."

*Fouste, supra* (Idaho), all considering their respective state statutes in harmony with § 503(a)(1) because of the absence of the fatal flaw in California's statutes.

In particular,

"Idaho's scheme for administering its unemployment compensation system conforms in all respects with the letter and spirit of 42 U.S.C. § 503(a)(1). There is no provision in the Idaho Code which delays the prompt payment of benefits after an initial determination of eligibility is made. Nor is there a provision which suspends or withholds the payment of benefits pending an appeal by the employer after an initial determination of eligibility is made.

On the contrary I.C. § 72–1368(j) provides:

[']( j)(1) Benefits shall be paid *promptly* in accordance with a determination, redetermination, appeals examiner decision or board findings allowing such benefit rights, regardless of:

(a) The pendency of a time period for requesting a redetermination, filing an appeal or petitioning for board review, or

(b) Pendency of a request for determination, appeal, or petition for review.

(2) Such payments shall *not* be withheld until a subsequent redetermination, appeals examiner decision, or board findings modifies or reverses the previous decision, in which event benefits shall be paid or denied in accordance with such decision.' [Emphasis added.]

The statutory provisions claimant attacks do not deny payment of benefits 'when due' as this phrase was construed by the United States Supreme Court in *Java*. These provisions simply establish the procedures for filing a claim for unemployment compensation benefits and for appealing an adverse determination. They do not unlawfully impede or delay the prompt payment of benefits which have been determined by a claims examiner to be due, so as to be violative of the 'when due' provision of the Social Security Act." *Fouste, supra* at 165–66, 540 P.2d at 1344–45.

 The import of § 503(a)(1) is timeliness, *Fusari v. Steinberg,* 419 U.S. at 387–88, 95 S.Ct. 533, but the time in question is the time the claimant is determined eligible at the first determination not ineligible at the redetermination. The defendant's redetermination of claimant's eligibility did not violate § 503(a)(1).

B. Plaintiff lastly contends that the defendant's repeated continuing of the final redetermination hearing contravenes 20 C.F.R. § 650.1(b) (1974).[10] This matter is strictly a question of reasonableness in light of the stipulated facts before us, for § 650.-1(b) expressly recognizes that "the greatest promptness that is administratively feasible will be longer in cases that involve . . reasonable requests by parties for continuances".

 Plaintiff appealed the redetermination on March 20, 1975, and a hearing was scheduled before the appeals examiner for April 18. That hearing was vacated because the employer could not attend. The

---

**10.** 20 C.F.R. § 650.1(b) provides:

"Sections 303(a)(1) and (3) of the Social Security Act require, as a condition for the receipt of granted funds, that State laws include provisions for methods of administration reasonably calculated to insure full payment of unemployment compensation when due, and opportunity for a fair hearing for all individuals whose claims for unemployment compensation are denied. The Secretary has construed these provisions to require, as a condition for receipt of granted funds, that State laws include provisions for hearing and deciding appeals for all unemployment insurance claimants who are parties to an administrative benefit appeal with the greatest promptness that is administratively feasible. What is the greatest promptness that is administratively feasible in an individual case depends on the facts and circumstances of that case. For example, *the greatest promptness that is administratively feasible will be longer in cases that involve* interstate appeals, complex issues of fact or law, *reasonable requests by parties for continuances* or rescheduling of hearings or other unforeseen and uncontrollable factors than it will be for other cases." (Emphasis added.)

hearing was rescheduled for May 2, but continued because of a prior commitment of the employer's counsel. Another hearing was scheduled for May 12, 1975, without consulting counsel; once again the setting was vacated because the employer's attorney had a previous engagement. Finally, the hearing was set for and held on June 3, 1975.

As long as this delay was, it was not the result of any deficiency in Idaho's statutory framework; it was only the result of the peculiar happenstances of the case. The three continuances granted by the appeals examiner, albeit not usual, cannot be said to be unreasonable or arbitrary. The actual delay here violates neither due process nor 20 C.F.R. § 650.1(b).

Judgment should be entered in favor of the defendant and against the plaintiff, and the cause dismissed with prejudice.