755 F.2d 1343
 Unempl.Ins.Rep. CCH 21,748
Charles D. BERG, On behalf of himself and all other persons
similarly situated, Appellants,
v.
Colleen SHEARER, Individually and in her official capacity
as Commissioner, Iowa Department of Job Service and Paul
Moran, Individually and in his official capacity as
Administrator, Job Insurance Division, Iowa Department of
Job Service, Richard Freeman, Individually and in his
official capacity as acting Commissioner, Iowa Department of
Job Service, Appellees.
 No. 84-1280.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 9, 1984.
Decided March 5, 1985.
 
 John Lansing Brown, Dubuque, Iowa, for appellants.
 Joseph L. Bervid, Des Moines, Iowa, for appellees.
 Before LAY, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Charles Berg brought this class action alleging that the Iowa Department of Job Service's (the Job Service) method of assessing and imposing administrative penalties is both constitutionally and statutorily impermissible. The district court, the Honorable Edward J. McManus presiding, held that the practices of the Job Service violate neither due process rights nor federal statutory requirements. We affirm.
 
 Facts
 
 2
 In April of 1977, Charles Berg filed for Iowa unemployment insurance benefits. Following standard Job Service procedures, Berg sent in a weekly claim card informing the Job Service as to whether he had worked and how much he had earned during the week for which he claimed benefits. The claim card required Berg to certify that the information he gave concerning the week covered by each claim was true. Berg also was required to sign a statement attesting to his knowledge of the legal penalties imposed on those making false benefit claims.[1]
 
 
 3
 In October and November of 1977, Berg received over $500 in unemployment benefits but failed to report wages he was earning during the period. Berg was eventually charged in the Allamakee County, Iowa magistrate court with unemployment insurance fraud. Berg pled guilty and was fined forty dollars.
 
 
 4
 Berg filed new claims for unemployment insurance benefits in 1979 and 1980. After offsetting a total of six weeks of benefits against the amount Berg had obtained fraudulently in 1977, the Job Service paid Berg unemployment compensation for the remainder of the benefit year ending in July of 1980.
 
 
 5
 Shortly after refiling his claim for the new benefit year, Berg received a notice to report to the Job Service for an interview. The notice sent to Berg was a standard call-in notice used by the Job Service to bring claimants suspected of fraud or misrepresentation to informal fact-finding interviews. Although the information gathered at the interview is used to determine whether to impose an administrative penalty on the claimant, Berg's notice did not contain any language informing him of the possibility of such a penalty.[2] The Job Service adds the words "administrative penalty" to some call-in notices, but does not define the term.
 
 
 6
 On August 11, 1980, Berg reported to his interview, gave a factual statement, and was told of the potential penalty assessment. Two days later, a Job Service claims deputy disqualified Berg from receiving benefits for the remainder of the benefit year ending July 25, 1981. The claims deputy explained that Berg's disqualification was based on his false statements or failure to disclose material facts for the purpose of obtaining job insurance benefits between October 2, 1977, and November 19, 1977.[3]
 
 
 7
 Berg appealed the decision of the claims deputy. After an evidentiary hearing, a hearing officer reversed Berg's disqualification, holding that the Job Service was not timely in assessing the administrative penalty. The Job Service appealed, and the Appeal Board reversed the hearing officer's decision. Berg did not challenge the Appeal Board decision in the Iowa state courts.
 
 
 8
 Berg filed the present action in the district court on July 13, 1981. On December 31, 1981, the court certified a class pursuant to Fed.R.Civ.P. 23(b)(2) as of July 13, 1981, consisting of "all present and future claimants for job insurance benefits in Iowa who have been subjected, or may be subjected in the future, to penalties authorized by Code of Iowa, Sec. 96.5(8)." A similar class action involving a different named plaintiff challenging the Job Service's benefit termination notice procedures was approved for settlement on January 24, 1983. The settlement required the Job Service to guarantee certain minimum rights and procedures before terminating benefits, including providing a clear statement of the issues to be considered at the interview in the pre-hearing notice. See Snyder v. Shearer, No. 80-395-C (S.D. Iowa Jan. 24, 1983). The settlement operated prospectively, thus benefiting some, but not all of the class members in the present case. On January 31, 1984, the district court entered an order dismissing Berg's suit.
 
 Discussion
 
 9
 Berg raises two challenges to the Job Service's method of assessing administrative penalties against unemployment insurance benefits claimants. First, he argues that the prehearing notice sent to claimants potentially subject to administrative penalty is inadequate and violates due process. Berg contends that the balancing test developed in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), requires the Job Service to provide a claimant with pretermination hearing notice informing him or her of the specific facts, issues, and consequences to be considered.
 
 
 10
 Unemployment benefits are a property interest protected by the due process requirements of the fourteenth amendment. See, e.g., Ross v. Horn, 598 F.2d 1312, 1317-18 (3d Cir.1979), cert. denied, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); Graves v. Meystrik, 425 F.Supp. 40, 47 (E.D.Mo.), aff'd, 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977); cf. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571-72, 92 S.Ct. 2701, 2705-07, 33 L.Ed.2d 548 (1972) ("[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.") (footnote omitted). In determining whether the Job Service's notice meets due process requirements, we look to the balancing test set forth in Mathews. The Supreme Court considered three factors in determining whether administrative procedures provided prior to the termination of disability benefits were constitutionally sufficient. The controlling considerations included:
 
 
 11
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 12
 Mathews, 424 U.S. at 335, 96 S.Ct. at 903 (citation omitted).
 
 
 13
 Berg contends that his interest in receiving unemployment benefits is substantial. Unlike the welfare benefits recipients in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), however, terminated Iowa unemployment insurance claimants are not deprived "of the very means by which to live [pending resolution of a controversy over eligibility.]" Id. at 264, 90 S.Ct. at 1018. Rather, as with the disability insurance benefits discussed in Mathews, unemployment insurance benefits are not based on need; claimants with and without alternative sources of financial support are equally eligible for unemployment assistance. While we recognize that "any 'salary replacement' insurance fulfills a need caused by lost employment," California Department of Human Resources Development v. Java, 402 U.S. 121, 130, 91 S.Ct. 1347, 1352, 28 L.Ed.2d 666 (1971), this need is not the subsistence level need underlying welfare benefits programs. Further, Berg received a full evidentiary post-termination hearing within thirty days of the Job Service's decision to cut off his benefits. The slight delay between a possible wrongful deprivation of benefits and reinstatement on appeal lessens the impact of official action on Berg's private interests. It is our judgment that Berg and the class do not present a private interest so substantial as to render the Job Service's notice procedure unconstitutional.
 
 
 14
 Under the second component of the Mathews test, we consider the risk of error under the procedures used by the Job Service, and the probable value of a change in procedure. Berg contends that the risk of erroneous deprivation of benefits is great, because the pre-termination notice does not allow claimants to prepare adequately for the informal fact-finding hearing. We focus on the nature of the relevant inquiry to determine the potential risk of erroneous deprivation. In Mathews, the Court contrasted the broad scope of relevant facts and the importance of questions of witness credibility and veracity in determining eligibility for welfare benefits with the sharply focused and easily documented issues necessary to the disability benefits decision-making process.
 
 
 15
 In the present case, claimants who may be subject to administrative penalty are flagged by computer. Although considerations of credibility and veracity may be involved where a claimant denies his or her intent to defraud, much of the evidence will be based on documentation. In Berg's case, for example, an Iowa state court had found him guilty of unemployment insurance fraud. As stated by the Court in Mathews, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." Mathews, 424 U.S. at 344, 96 S.Ct. at 907. See also Ross v. Horn, 598 F.2d at 1319.
 
 
 16
 We also note that the settlement reached in Snyder ensures that part of the class Berg represents will receive a more detailed form of pre-termination hearing notice. Such claimants will be able to "mold [their] oral presentation[s] in light of the reasons given in the [pre-termination notices-]." Gary v. Nichols, 447 F.Supp. 320, 325 (D. Idaho 1978).[4] Berg himself, having received a full evidentiary hearing shortly after termination of his benefits, has not demonstrated his notice subjected him to any significant risk of erroneous deprivation. As we assume Berg is typical of the class he represents, we do not believe the second factor of the Mathews test renders the Job Service's notice procedure unconstitutional.
 
 
 17
 Finally, we must consider the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335, 96 S.Ct. at 903. Berg contends that new notice requirements would require little more than a printing change. Under the Snyder settlement, the Job Service agreed to make substantially the change in the pre-termination hearing notice that plaintiffs request. The government interest involved in providing all class members not affected by the Snyder settlement, including Berg, with new notice and hearings is significant. Although fiscal concerns are not controlling, see Mathews, 424 U.S. at 348, 96 S.Ct. at 909, they are a factor in determining the weight of the third component of the Mathews balancing test. The administrative costs of providing plaintiffs with new notice and hearings would be enormous, and of little value. Again assuming, as we must, that Berg represents the class, all presently terminated claimants have received full evidentiary post-termination hearings. The burden on Job Service to provide an unknown number of claimants with new hearings outweighs the cost to those claimants of the short period of benefits deprivation experienced before receiving a post-termination hearing.
 
 
 18
 The Mathews balancing test clearly tips in favor of the Job Service. Berg and the class he represents have shown no significant injury caused by inadequate pre-termination notice. For many members of the class, the Snyder settlement has avoided any potential harm they may suffer or have suffered. The Job Service's notice procedure meets fourteenth amendment procedural due process requirements. See Graves v. Meystrick, 425 F.Supp. at 49.
 
 
 19
 Berg raises a second constitutional challenge to the Job Service's system of imposing administrative penalties. Section 96.5(8) of the Iowa Code directs the Job Service to impose administrative penalties on certain claimants of "not more than the remaining benefit year as determined by the [Job Service] according to the circumstances of each case." (Emphasis added). It is asserted that due process rights are violated because the Job Service has no written standards guiding Job Service officers in determining the length of an administrative penalty.
 
 
 20
 Recognizing that the Mathews balancing test again applies, Berg contends that the risk of erroneous deprivation of his private interest in receiving unemployment compensation is high. He argues that the lack of written standards prevents claimants from ascertaining which factors will be important at the fact-finding interview.[5]
 
 
 21
 We agree that written standards guiding the determination of the length of an administrative penalty would ensure greater uniformity in assessing the length of administrative penalties. We do not, however, believe the lack of such written standards violates a claimant's due process rights. As we have noted, Berg's private interest in unemployment compensation is great, but is not as vital as the interest of an eligible welfare claimant in receiving welfare benefits. Further, the risk of erroneous deprivation of benefits is not as serious as Berg contends. The length of an administrative penalty is not determined until after the decision to impose the penalty has been made. Members of the class represented by Berg already have been found ineligible, and await the imposition of penalty. The factors used in determining the length of the administrative penalty are the same as those used in determining the need to assess the penalty. Both findings focus on the claimant's intent to defraud the Job Service. With adequate notice, the claimant can present all facts he or she considers relevant. Berg himself has presented no evidence that written standards would have lessened the length of his penalty.
 
 
 22
 Finally, the government interest in retaining flexibility and discretion in determining the length of an administrative penalty is significant. The Iowa unemployment compensation statute requires the Job Service to consider the circumstances of each case in calculating the length of an administrative penalty. Berg is correct in stating that the government has an interest in providing eligible claimants with unemployment compensation benefits. In this case, however, we consider claimants who are ineligible. Determining the length of ineligibility requires a flexibility that outweighs the class need to be able to refer to a specified list of factors used in calculating the term of the penalty. Cf. Harris v. Lukhard, 547 F.Supp. 1015, 1032-33 (W.D.Va.1982), aff'd 733 F.2d 1075 (4th Cir.1984) (holding that the government's interest in flexibility outweighed plaintiff's interest in the promulgation of specific written regulations determining certain Medicaid eligibility requirements). We cannot say that the lack of written standards violates Berg's due process rights.[6]
 
 
 23
 In sum, we hold that Job Service's notice procedure is constitutionally adequate in light of Berg's lack of injury and the settlement reached in Snyder v. Shearer, No. 80-395-C (S.D. Iowa Jan. 24, 1983). We further hold that although written standards guiding the determination of the length of administrative penalties may be desirable, the lack of such standards does not violate plaintiffs due process rights.[7]
 
 
 24
 The district court is affirmed.
 
 
 
 [1]
 The Job Service provides every claimant with a pamphlet explaining that claimants must report all wages earned during a claimed benefits period, and warning claimants of the severe legal penalties imposed on those attempting to defraud the Job Service
 
 
 [2]
 Iowa Code Sec. 96.5(8) (Supp.1983) provides:
 Administrative penalty. If the department finds that, with respect to any week of an insured worker's unemployment for which such person claims credit or benefits, such person has, within the thirty-six calendar months immediately preceding such week, with intent to defraud by obtaining any benefits not due under this chapter, willfully and knowingly made a false statement or misrepresentation, or willfully and knowingly failed to disclose a material fact; such person shall be disqualified for the week in which the department makes such determination, and forfeit all benefit rights under the unemployment compensation law for a period of not more than the remaining benefit period as determined by the department according to the circumstances of each case. Any penalties imposed by this subsection shall be in addition to those otherwise prescribed in this chapter.
 The administrative penalty is in addition to a statutory requirement to make full restitution of benefits received fraudulently and a statutory provision allowing criminal prosecution and penalties. See Iowa Code Sec. 96.16 (1982); Iowa Code Secs. 714.8-.14 (1982).
 
 
 [3]
 Due to an isolated computer malfunction, the Job Service did not issue an administrative penalty against Berg when he applied for benefits in 1979. The parties stipulated that had the computer been functioning correctly, it would have produced a notice indicating to the Job Service that Berg was in active claim status and possibly subject to "further action."
 
 
 [4]
 Berg argues that the new notice procedures are still unsatisfactory, because the settlement does not require the Job Service to add the term and definition of "Administrative Penalty" to the pre-termination notice. The Snyder settlement, however, states that the pre-termination hearing notice shall "state clearly, adequately and conspicuously the issue which may cause the termination. The explanation of the issues * * * must notify the claimant of the specific facts in dispute * * *." Snyder v. Shearer, No. 80-395-C (S.D. Iowa Jan. 24, 1983). We believe that notice in compliance with the settlement terms provides claimants with sufficient information to prepare for the pre-termination hearing
 
 
 [5]
 When asked what factors Job Service's investigators consider in imposing administrative penalties, one Job Service officer stated in her deposition:
 There are many things that you have to consider in connection with determining an administrative penalty. The prosecution is one of the--one of the severe reasons. The number of employers involved, the amount of money, the number weeks involved and just the underlying circumstances, I suppose, from what we can uncover to, if you will, the degree of intent.
 Another officer testified that "Job Service investigators are instructed to consider the merits of each case individually based on the facts before them and the element of intent that comes from the facts."
 
 
 [6]
 Berg also argues that the Job Service's method of assessing and imposing administrative penalties violates 42 U.S.C. Sec. 503(a)(1) (1982), which requires that a state's method of administering unemployment compensation "be reasonably calculated to insure full payment * * * when due * * *." Relying on California Department of Human Resources Development v. Java, Berg and the class contend that because the Job Service's system is constitutionally defective, the Iowa agency does not reasonably insure full payment "when due."
 Under the California system struck down in Java, eligible claimants' benefits were suspended when the employer protested the determination of eligibility. In this case, Iowa does not suspend benefits until after the claimant is determined ineligible under procedures we hold constitutional. "The basic thrust of the statutory when due requirement is timeliness." Fusari v. Steinberg, 419 U.S. 379, 388, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 reh'g denied, 420 U.S. 955, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975) (footnote omitted). We hold that Sec. 503(a)(1) does not require the Job Service to institute further procedural protections. See Ross v. Horn, 598 F.2d at 1321; Gary v. Nichols, 447 F.Supp. at 328-29.
 
 
 [7]
 In view of our holding, we need not address plaintiff's arguments on the issue of damages