816 F.2d 1241
 55 USLW 2585
 Ruth WOODSMALL, Connie Woodsmall and Lavina Woodsmall, Appellants,
v.
Richard LYNG, Secretary of the United States Department of
Agriculture; Dwight Calhoun, Acting Administrator of the
Farmers Home Administration; R.R. Pim, State Director of
the Farmers Home Administration; Donald Bell, District
Director of the Farmers Home Administration; Betty L.
Hilbrant, Henry County Supervisor of the Farmers Home
Administration; the United States Department of
Agriculture; and the Farmers Home Administration, Appellees.
 No. 86-1680.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 9, 1986.
Decided April 15, 1987.
Rehearing and Rehearing En Banc Denied June 1, 1987.
 
 Janice E. Rutledge, Iowa City, Iowa, for appellants.
 Raymond W. Fullerton, Washington, D.C., for appellees.
 Before LAY, Chief Judge, WOLLMAN, Circuit Judge, and HANSEN,* District Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Ruth, Connie, and Lavina Woodsmall appeal the district court's[1] dismissal of their action seeking judicial review of the Farmers Home Administration's (FmHA's) denial of their rural housing loan application. The issues in this appeal are whether, or to what extent, the FmHA's action is subject to judicial review, and whether the FmHA has failed to promulgate adequate written standards for evaluating creditworthiness. We affirm.
 
 
 2
 * Section 501 of the Housing Act of 1949, ch. 338, Sec. 501, 63 Stat. 413, 432 (codified as amended at 42 U.S.C. Sec. 1471 (1982 & Supp. III 1985)), authorizes the Secretary of Agriculture to extend financial assistance through the FmHA to residents of rural areas for the purchase, construction, or improvement of dwellings and other facilities. The conditions of eligibility for the assistance require an applicant to show that (1) he is without an adequate dwelling or other facilities for his own use, (2) he is without sufficient resources to provide the necessary housing and buildings on his own account, and (3) he is unable to secure the credit necessary for such housing and buildings from other sources upon terms and conditions which he could reasonably be expected to fulfill. 42 U.S.C. Sec. 1471(c) (1982). Section 502 of the Housing Act provides that if an applicant is eligible for assistance under section 501 and has the ability to repay the sum to be loaned, the Secretary may make a loan to the applicant.[2]
 
 
 3
 The Woodsmalls'[3] application for a section 502 rural housing loan was denied by the FmHA. The FmHA's county supervisor informed the Woodsmalls of the rejection and stated that "[t]he basis for this rejection is from information received from your credit reports and credit reference letters and judgments on record." When efforts at informal negotiations between the Woodsmalls and the FmHA were unsuccessful, the Woodsmalls pursued an administrative appeal. After a hearing at which the Woodsmalls presented evidence of their creditworthiness, an FmHA assistant district director notified the Woodsmalls that the denial of their application was proper. At this stage of the proceedings the reasons for the rejection of the Woodsmalls' application were stated as: "Information received from Credit Reports, credit reference letters and judgments on record indicate a credit history unsatisfactory to qualify for a Farmers Home Administration loan." In a further appeal to the state director, the original decision was upheld once again.[4] The Woodsmalls then filed this action for judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. Secs. 701-706 (1982) (APA), alleging that the decision was not supported by substantial evidence and that the Secretary had unlawfully failed to promulgate adequate standards or guidelines for evaluating creditworthiness. The district court dismissed the action, finding that the decision was not subject to judicial review, or, if it was, the decision was supported by substantial evidence. The court also upheld the failure to promulgate further standards for evaluating creditworthiness.
 
 II
 
 4
 The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. Sec. 702 (1982). There is a strong presumption that agency actions are reviewable. Bowen v. Michigan Academy of Family Physicians, --- U.S. ----, 106 S.Ct. 2133, 2135-36, 90 L.Ed.2d 623 (1986); see also Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Nevertheless, the APA also provides that the chapter on judicial review "applies, according to the provisions thereof, except to the extent that--(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. Sec. 701(a) (1982). The Secretary argues that the FmHA's denial of the Woodsmalls' loan application for lack of creditworthiness is an agency action that is committed to agency discretion by law under section 701(a)(2) and therefore is unreviewable.
 
 
 5
 The Supreme Court first discussed the section 701(a)(2) exception to judicial review in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), where the Court found that section 701(a)(2) was "a very narrow exception" that is applicable "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " Overton Park, 401 U.S. at 410, 91 S.Ct. at 820 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). In their attempts to implement the Overton Park "no law to apply" standard, the courts have adopted several different approaches for determining when there is law to apply. A literal approach gained favor in the Ninth Circuit. In City of Santa Clara v. Andrus, 572 F.2d 660, 666 (9th Cir.), cert. denied, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978), the court found that "[t]here is 'law to apply,' only if a specific statute limits the agency's discretion to act in the manner which is challenged." See also Greenwood Utils. Comm'n v. Hodel, 764 F.2d 1459, 1464 (11th Cir.1985). This court, however, took another approach. In Tuepker v. Farmers Home Admin., 708 F.2d 1329, 1332 (8th Cir.1983), the court followed the District of Columbia Circuit's decision in Natural Resources Defense Council, Inc. v. SEC, 606 F.2d 1031, 1043 (D.C.Cir.1979), and recognized that " '[i]n practice, the determination of whether there is "law" to apply necessarily turns on pragmatic considerations as to whether an agency determination is the proper subject of judicial review.' " Tuepker, 708 F.2d at 1332 (quoting Natural Resources Defense Council, 606 F.2d at 1043). The Tuepker court stated further that:
 
 
 6
 In determining reviewability of an agency's actions, a court must look at the allegations raised in the complaint, together with the governing statutes and regulations, and determine: (1) whether the challenged agency action is of the type Congress intended be left to a reasonable exercise of agency expertise; and (2) whether the problem raised is one suitable for judicial determination. It is only then that a court can sufficiently ascertain whether there is "law" to apply within the meaning of Overton Park.
 
 
 7
 Id. See also Story v. Marsh, 732 F.2d 1375, 1379 (8th Cir.1984).[5]
 
 
 8
 The "pragmatic considerations" approach was invoked by the District of Columbia Circuit in Chaney v. Heckler, 718 F.2d 1174, 1185 (D.C.Cir.1983), rev'd, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), in a decision subsequently overturned by the Supreme Court. The Supreme Court's opinion in Chaney is the Court's most recent interpretation of the "no law to apply" standard. The Court stated that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Chaney, 470 U.S. at 830, 105 S.Ct. at 1655. The Court, however, did not directly utilize the "no law to apply" standard to resolve the case. Chaney involved an agency's refusal to take requested enforcement action. The Court concluded that, unlike other agency actions, agency decisions not to enforce are not presumptively reviewable. Rather, the Court held that a presumption of unreviewability attaches to agency refusals to enforce unless there is law to apply.
 
 
 9
 Chaney's emphasis on statutory language as the source of law to apply casts doubt on the "pragmatic considerations" approach. The Chaney Court disparagingly referred to pragmatic considerations such as those relied on by the court of appeals in that case as amounting to "an assessment of whether the interests at stake are important enough to justify intervention in the agencies' decisionmaking." Chaney, 470 U.S. at 834, 105 S.Ct. at 1657. The judge who dissented from the court of appeals' opinion[6] in Chaney has asserted that the Supreme Court disapproved the "pragmatic considerations" approach, California Human Dev. Corp. v. Brock, 762 F.2d 1044, 1052 (D.C.Cir.1985) (Scalia, J., concurring), and several commentators have agreed. See Note, The Impact of Heckler v. Chaney on Judicial Review of Agency Decisions, 86 Colum.L.Rev. 1247, 1252 n. 32 (1986) ("the Chaney Court's affirmation of Overton Park makes it clear that * * * review should be denied only where the court can discern no statutory language which might constrain the agency's discretion"); The Supreme Court, 1984 Term, Leading Cases, 99 Harv.L.Rev. 120, 270 (1985) ("Chaney rejected the 'pragmatic test' for determining when review is appropriate"). On the other hand, Chaney has not resulted in wholesale rejection of the approach. See Doe v. Casey, 796 F.2d 1508, 1525, 1531 (D.C.Cir.1986) (Buckley, J., dissenting) (criticizing majority for ignoring cases relying on pragmatic considerations), petition for cert. filed sub nom. Gates v. Doe, 55 U.S.L.W. 3572 (U.S. Feb. 6, 1987) (No. 86-1294); Cardoza v. Commodity Futures Trading Comm'n, 768 F.2d 1542, 1549 (7th Cir.1985) ("we read Chaney solely as reaffirming the recognized position that Sec. 701(a)(2) applies in certain circumstances where courts are unqualified to decide whether an agency has abused its discretion"). The Court's emphasis on statutory language arguably can be confined to the context of refusals to take enforcement action. See Robbins v. Reagan, 780 F.2d 37, 46 (D.C.Cir.1985) ("The requirement of a heightened level of discernible standards controlling discretion to rebut the presumption of nonreviewability applicable in decisions not to take enforcement action must not be applied outside of that context.")
 
 
 10
 We believe that Chaney's effect on the "pragmatic considerations" approach of Tuepker is an issue better left for another day.[7] Under either the Tuepker approach or an approach that emphasizes the centrality of the statutory language--the arguable command of Chaney--the outcome would be the same in this case.[8] The Woodsmalls' loan application was denied on the ground that their credit history demonstrated a lack of creditworthiness; they now ask the court to reevaluate the evidence and the FmHA's conclusion concerning their creditworthiness. The court is not equipped to undertake such a task, for in these matters we have neither the training nor experience of an FmHA loan officer. The agency's determination of creditworthiness is a "qualitative, subjective decision based on agency expertise," Tuepker, 708 F.2d at 1332, within the bounds of the statute's direction that the Secretary "may" make loans to applicants that he determines to have "the ability to repay in full the sum to be loaned, with interest." 42 U.S.C. Sec. 1472(a)(1) (Supp. III 1985). Moreover, we do not find in this statutory language or in any other provision the kind of meaningful standards that would, under Chaney, allow us to judge the agency's exercise of discretion in denying a loan application for lack of creditworthiness.[9] Consequently, we hold that the FmHA's evaluation of the Woodsmalls' creditworthiness and conclusion that a lack of creditworthiness justifies denial of the Woodsmalls' loan application is not subject to judicial review because it is an action that is committed to agency discretion by law.
 
 III
 
 11
 Our conclusion that the FmHA's creditworthiness determination is unreviewable does not, however, foreclose review of the Woodsmalls' claim that the Secretary has failed to promulgate adequate standards for evaluating creditworthiness. Story v. Marsh, 732 F.2d 1375, 1381 (8th Cir.1984) (even when matter is committed to agency discretion by law, court may review for lack of agency jurisdiction, improper influence on agency, or violation of constitution, statute, or regulation) (citing Local 2855, AFGE (AFL-CIO) v. United States, 602 F.2d 574, 580 (3d Cir.1979)); see also Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation, 792 F.2d 782, 791-92 (9th Cir.1986). Tuepker itself indicated that judicial review might have been appropriate in that case had Tuepker alleged a " 'substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error.' " Tuepker, 708 F.2d at 1332 (quoting Scroggins v. United States, 397 F.2d 295, 297, 184 Ct.Cl. 530 cert. denied, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)). And in Iowa ex rel. Miller v. Block, 771 F.2d 347, 351-52 n. 4 (8th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 3312, 92 L.Ed.2d 725 (1986), this court noted that review was proper where the appeal did not turn on "technical issues of the agency's substantive expertise," but rather was a "purely legal inquiry." Because this issue presents only the legal question whether the Secretary is required to promulgate further standards for evaluating creditworthiness, it is clearly within the competence of the court and a matter on which there is law to apply.
 
 
 12
 The Woodsmalls argue that the Secretary's failure to promulgate further standards for evaluating creditworthiness is unlawful on two grounds: first, that it violates the due process clause of the Constitution, and second, that it violates a "[g]ood faith consideration," Allison v. Block, 723 F.2d 631, 636 (8th Cir.1983), of the statute authorizing the Secretary to make rural housing loans. 42 U.S.C. Sec. 1472(a)(1) (Supp. III 1985). Any claim of an unconstitutional deprivation of property without due process must be premised on a demonstration that a "constitutionally protected property interest" is at stake. Thus, the Woodsmalls must demonstrate that they possess a constitutionally protected property interest in the benefits offered by the section 502 rural housing loan program. In DeJournett v. Block, 799 F.2d 430 (8th Cir.1986), a case involving a farmer whose FmHA loan applications were denied, this court recently found that "neither the Supreme Court nor this court has held that the filing of a FmHA loan application in itself provides applicants * * * with a 'legitimate claim of entitlement protected by the Due Process Clause of the Fifth * * * Amendment[ ].' " DeJournett, 799 F.2d at 431 (quoting Lyng v. Payne, --- U.S. ----, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921 (1986)), see Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir.1986). Moreover, even assuming that a constitutionally protected property interest is at stake, we do not believe the failure to promulgate further creditworthiness standards violates due process under the balancing test developed in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The controlling considerations listed in Mathews included:
 
 
 13
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 14
 Id. at 335, 96 S.Ct. at 903 (citation omitted). In Berg v. Shearer, 755 F.2d 1343 (8th Cir.1985), this court applied the Mathews test in denying a due process claim based on a lack of written standards. In that case a recipient of unemployment benefits who was subjected to an administrative penalty, and thus disqualified from receiving benefits, challenged the lack of written standards to guide unemployment officials in determining the length of an administrative penalty. We believe that an application of the Mathews considerations produces the same result in this case as in Berg.
 
 
 15
 Although the Woodsmalls' private interest in receiving a rural housing loan, which we here assume arguendo to be a protected property interest, is substantial, we cannot conclude that it is as vital as is the interest of an eligible welfare claimant in receiving benefits. See Atkins v. Parker, 472 U.S. 115, 128, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985) (food stamps); Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (AFDC and state assistance programs). The rural housing loan program addresses a basic need, but it is not the subsistence level need involved in welfare benefit programs. See Berg, 755 F.2d at 1346. Furthermore, the risk of erroneous deprivation from a lack of written standards is not as high as the Woodsmalls argue. The denial of the Woodsmalls' application was reviewed at three different levels of the FmHA, and the Woodsmalls were made fully aware of the sources of the negative credit information that the FmHA relied on to deny the loan. Also, the regulations are not entirely silent on creditworthiness. Applicants have the right not to have certain circumstances considered as indicative of an unacceptable credit history, 7 C.F.R. Sec. 1910.5(c) (1986), and when loans are refused because of credit information the FmHA must indicate what specific information led to the rejection and make the information available to the applicant. Id. Sec. 1910.6(d), (e). Finally, the government interest in maintaining flexibility and discretion in evaluating creditworthiness is significant. See Berg, 755 F.2d at 1348. The rural housing loan program is, after all, a loan program. Each loan application presents a different set of financial circumstances, which the Secretary contends must be evaluated on an individual basis. The Secretary argues that "an attempt to articulate fully all of the matters considered by a good loan officer would likely produce a mind-boggling regulatory quagmire." Appellees' Brief at 36 n. 12. We agree that the administrative burdens of requiring standards for evaluating creditworthiness would be undue in the context of this program. Therefore, we hold that the lack of further written standards or guidelines does not violate the Woodsmalls' due process rights.
 
 
 16
 We also do not believe that a "good faith consideration" of the loan program statute in this case requires further standards for creditworthiness. In Allison v. Block, 723 F.2d 631, 636 (8th Cir.1983), this court ordered the Secretary to promulgate a set of substantive standards either by rulemaking or through adjudication because "[g]ood faith consideration of the [statute] by the Secretary requires the existence of some substantive standards." In Allison the Secretary had failed altogether to implement a loan deferral provision. The court affirmed an injunction against foreclosure on the Allison farm until the Secretary had developed procedures and substantive standards to implement the loan deferral program. This, on the other hand, is not a case where the Secretary has refused to implement a loan program altogether. Furthermore, as we noted above, the Secretary has promulgated regulations that should address some of the concerns of borrowers whose creditworthiness places their loan applications in jeopardy. Requiring more standards would result in undue administrative burdens.[10] Consequently, we cannot say that more in the way of substantive standards is needed.
 
 
 17
 In conclusion, we hold that the Secretary's evaluation of the Woodsmalls' creditworthiness and denial of the Woodsmalls' application on that basis is not judicially reviewable. Although the Woodsmalls' claim that the Secretary has failed to promulgate adequate written standards for evaluating creditworthiness is subject to judicial review, neither the due process clause nor the rural housing loan program statute require further standards. Accordingly, the district court's dismissal of the Woodsmalls' complaint is affirmed.
 
 
 
 *
 The HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa
 
 
 [2]
 The section, as codified at 42 U.S.C. Sec. 1472(a)(1) (Supp. III 1985), provides in part:
 If the Secretary determines that an applicant is eligible for assistance as provided in section 1471 of this title and that the applicant has the ability to repay in full the sum to be loaned, with interest, giving due consideration to the income and earning capacity of the applicant and his family from the farm and other sources, and the maintenance of a reasonable standard of living for the owner and the occupants of said farm, a loan may be made by the Secretary to said applicant * * *.
 
 
 [3]
 The Woodsmall household consists of Lavina Woodsmall, her daughter Connie and her son, and her daughter Ruth and her son. They alleged in their complaint that their rented home in Mt. Pleasant, Iowa, was too small to meet their needs
 
 
 [4]
 The review officer's letter notifying the Woodsmalls of the unfavorable outcome of their appeal to the state director stated:
 The unfavorable decision was based on your lack of acceptable credit history. Specifically: Deficiency judgements filed by Walter Detrick and Postal Thrift indicate poor credit history. Additional concerns stem from Ford Motor Credit reporting you were late one out of six months, Henry County Saving Bank and Roth's Trustworthy Hardware both reporting fair ratings.
 The determination of unacceptable credit history was not based on an isolated incident of delinquent payments but an overall general pattern of slow and unsatisfactory payments.
 
 
 [5]
 Professor Davis has strongly criticized the "no law to apply" standard, stating that it is "flagrantly and obviously unsound, because, whether or not law applies, a judicial check is often needed to assure that administrative action is not arbitrary, capricious, or an abuse of discretion." K. Davis, 5 Administrative Law Treatise Sec. 28:8, at 290 (2d ed. 1984) (emphasis omitted). In turn, Professor Davis praises the "pragmatic considerations" approach, specifically noting Natural Resources Defense Council and Tuepker, as a reconciliation of "no law to apply" with the needs of justice. Id. at 298-99, 309-10
 
 
 [6]
 Judge, now Justice, Scalia dissented from the court of appeals' opinion in Chaney and from the denial of rehearing en banc, stating that the "pragmatic considerations" approach is not an application of "no law to apply" as stated in Overton Park, "but the substitution of an entirely different test--which can be summarized by saying that we intervene when we think it a good idea." Chaney v. Heckler, 724 F.2d 1030, 1031 (D.C.Cir.1984) (Scalia, J., dissenting from denial of rehearing en banc); see also Investment Co. Inst. v. Federal Deposit Ins. Corp., 728 F.2d 518, 526 n. 6 (D.C.Cir.1984)
 
 
 [7]
 This court applied Chaney without reference to Tuepker in Hill v. Group Three Housing Dev. Corp., 799 F.2d 385, 396-97 (8th Cir.1986). In Iowa ex rel. Miller v. Block, 771 F.2d 347, 350 n. 2 (8th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 3312, 92 L.Ed.2d 725 (1986), this court emphasized that Chaney involved an agency enforcement decision
 
 
 [8]
 Neither of the parties has chosen to argue that Tuepker is invalid, nor have they sought to outline what might remain of the decision after Chaney. The Woodsmalls, although noting that Tuepker is arguably inconsistent with Overton Park, argue that the Court need not decide that issue. Appellants' Brief at 9 n. 3. The Secretary argues both that Tuepker is consistent with and distinguishable from Chaney. Appellees' Brief at 20
 
 
 [9]
 The Woodsmalls argue that there is "law to apply" here, citing the statutory provisions at 42 U.S.C. Secs. 1471(c), 1472(a), 1487(a)(1), and the regulations at 7 C.F.R. Part 1910, specifically 7 C.F.R. Sec. 1910.5(c) (1986), which enumerates circumstances that the FmHA will not consider indicative of an unacceptable credit history. None of these provisions provide standards for determining creditworthiness that would assist the court in judging the agency's exercise of discretion in this matter
 
 
 [10]
 The Woodsmalls argue also that the Secretary's failure to promulgate adequate standards allows the FmHA to behave like a prudent private lender, which the Woodsmalls contend violates the purpose of the rural housing loan program to assist persons of low or moderate income. Forty percent of the funds appropriated for use in the section 502 rural housing loan program are set aside and made available for "very low-income families or persons." 42 U.S.C. Sec. 1472(d) (Supp. III 1985). We are unwilling to extrapolate a requirement for further creditworthiness standards from this provision, especially where there is no allegation that the Secretary has shown a complete inability to find low income persons eligible for loans. See Daniels v. Woodbury County, 742 F.2d 1128, 1135 (8th Cir.1984) (government's inability to find that any applicants met requirements appeared arbitrary, and thus may have indicated insufficient standards). We also are doubtful that a prudent private lender would restrain his evaluation of an applicant's creditworthiness or provide information to an applicant in the manner that the Secretary's already existing regulations require