**STATE OF NORTH DAKOTA EX REL. BOARD OF UNIVERSITY AND SCHOOL LANDS, Plaintiff,**

v.

**Clayton K. YEUTTER, U.S. Secretary of Agriculture; Milton Hertz, Administrator of the Agricultural Stabilization and Conservation Service; James M. Davis, Assistant Deputy Administrator of the Agriculture Stabilization and Conservation Service, Defendants.**

**STATE OF NORTH DAKOTA EX REL. BOARD OF UNIVERSITY AND SCHOOL LANDS, Plaintiff,**

v.

**Clayton K. YEUTTER, U.S. Secretary of Agriculture; Milton Hertz, Administrator of the Agricultural Stabilization and Conservation Service; Thomas A. Vongarlem, Assistant Deputy Administrator of the Agriculture Stabilization and Conservation Service, Defendants.**

Civ. Nos. A1–88–179, A1–88–198.

United States District Court, D. North Dakota, Southwestern Division.

April 20, 1989.

Charles M. Carvell, Ass't. Atty. Gen., State Land Dept., Bismarck, N.D., for plaintiff.

Gary Annear, U.S. Atty., Fargo, N.D., Margaret Plank, Trial Atty., Federal Programs Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

The facts of these two actions are not in dispute. Civil number A1–88–179 concerns a 101.8 acre tract of land located in township 148 north, range 62 west, of Eddy County, North Dakota. In November of 1978, the North Dakota Board of University and School Lands, through the Bank of North Dakota (the State), loaned money to Sigurd Arnold and Delores Haugland, owners of the tract. The loan was secured by a mortgage on the 101.8 acres. On July 15, 1986, the State decided to foreclose on the tract since mortgage payments had been delinquent for the past five years. Title passed to the State on November 16, 1987, by sheriff's deed after the owners failed to redeem within the prescribed period under North Dakota law. The North Dakota Board of University and School Lands, as the rightful owner of the tract, made application with the Eddy County ASCS Committee on February 10, 1988, to have the land placed in the Conservation Reserve Program (CRP). The Eddy County Committee denied the application on March 10, 1988, finding that the State was ineligible to participate in the CRP until the land had been owned for three years.

Civil number A1–88–198 concerns a separate tract of land consisting of 314.9 acres in section 4, township 153 north, range 77 west, of McHenry County, North Dakota. Melvin and Sharon Klimpel, the owners of the land, were loaned money by the State on December 4, 1978, and as security the State took a mortgage on this tract. The State foreclosed on this tract of land as well on July 15, 1986, at which time the Klimpels were approximately four years delinquent in their payments. Title passed to the State on November 13, 1987, again by sheriff's deed after the Klimpels also failed to redeem their land. Application was made with the McHenry County ASCS Committee on February 10, 1988, to have this land placed in the CRP. Here too, however, the Committee denied the application for the same reason the application concerning the 101.8 acre tract was denied.

Both decisions were appealed through the administrative appeals process. The State of North Dakota then commenced the present actions in federal district court after a final decision was issued by the the Secretary of Agriculture denying the State's applications to include the two separate parcels of land in the CRP. Pursuant to an order of this court the actions have been consolidated. Cross-motions for summary judgment have been filed by the respective parties.

The CRP is intended to induce land owners of highly erodible land to remove the property from agricultural usage and put it into grass or other cover in order to stabi-

lize the topsoil.[1] Congress believed a successful conservation program would; (1) protect the country's long-term capability to produce food and fiber; (2) reduce soil erosion on land in the program by as much as 20 tons per acre per year; (3) reduce sedimentation in streams and along roads; (4) improve water quality; (5) create better habitat for fish and wildlife through improved food and cover and better moisture conditions; (6) curb production of surplus commodities; and (7) provide some needed income support for farmers.[2] As implemented the program does not exclude political subdivisions, corporations, or financial institutions who may have acquired land. *See* 7 CFR § 704.2(19) (1988). The program works by lease agreements between the government and the land owners whereby the government pays, in effect, a cash rent for a minimum of ten years. *See* 16 U.S.C. § 3831 (1988 Supp.).

Safeguards designed into the administration include a maximum of acres per county, a maximum appropriated budget and the grant of wide discretion to the program administrator. Another safeguard is designed to prevent speculators from purchasing marginal lands solely for the purpose of placing the land in the conservation program. To achieve this objective, Congress intended that land be ineligible for the conservation acreage reserve if there had been an ownership change in the preceding three years. *See* 16 U.S.C. § 3835(a)(1) (1988 Supp.)[3] Exceptions to the general rule were recognized. Land otherwise excludable under the three year rule could be placed in the conservation program if (1) the new ownership was acquired by will or succession; (2) the new ownership was acquired before January 1, 1985; (3) the change occurred as a result of a foreclosure followed by the owner exercising his redemption rights; or (4) the Secretary of Agriculture determines that the land was acquired under circumstances

which give adequate assurance that such land was not acquired for the purpose of placing it in the program. *See* 16 U.S.C. § 3835(a)(1) (1988 Supp.).

In denying the State's applications, the Secretary determined that there was not "adequate assurance" that the property was not acquired to place it in the reserve program. The State thus commenced the above actions challenging the Secretary's actions as being arbitrary, capricious, and an abuse of discretion, and otherwise not in accordance with the law. The State contends that adequate assurances do exist for an exception to the three year ownership rule. The State further contends that the Secretary abused his discretion by ignoring the statutory exceptions to the three year ownership rule and by refusing to make a proper determination under the "adequate assurance" exception. The State seeks declaratory relief declaring that the Secretary's decisions are unlawful. The State also seeks an order requiring the Secretary to immediately place the parcels of land in question in the conservation program.

The Secretary contends that under the Administrative Procedures Act this court lacks subject matter jurisdiction to consider the case. The Administrative Procedures Act provides that a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. 5 U.S.C. § 702. Section 701(a)(2) further provides, however, that judicial review of agency action is precluded to the extent that it is committed to agency discretion by law. 5 U.S.C. 701(a)(2). This exception to judicial review of agency action has been interpreted very narrowly and held to apply only in those "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park v.*

---

1. *See* H.R. No. 271, 99th Cong., 1st Sess., pt. 1, 78 (1985) *reprinted in* 1985 U.S.Code Cong. & Admin.News 1103, 1182; S.Rep. No. 145, 99th Cong., 1st Sess., 300 (1985) *reprinted in* 1985 U.S.Code Cong. & Admin.News 1676, 1966.

2. H.R. No. 271, 99th Cong., 1st Sess., pt. 1, 81 (1985) *reprinted in* 1985 U.S.Code Cong. & Admin.News 1103, 1185.

3. *See also* S.Rep. No. 145, 99th Cong., 1st Sess., 306 (1985) *reprinted in* U.S.Code Cong. & Admin.News 1676, 1972.

*Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). The Secretary contends that the statute at issue here expressly gives the Secretary discretion to waive the three year ownership rule and that no guidelines for review are provided.

The State contends that the court does have jurisdiction based on pragmatic considerations in determining whether there is law to apply to the case. The pragmatic approach was adopted by the Eighth Circuit Court of Appeals in *Tuepker v. Farmers Home Admin.,* 708 F.2d 1329 (8th Cir. 1983). In *Tuepker* the court stated:

> In determining reviewability of an agency's actions, a court must look at the allegations raised in the complaint, together with the governing statutes and regulations, and determine: (1) whether the challenged agency action is of the type Congress intended be left to a reasonable exercise of agency expertise: and (2) whether the problem raised is one suitable for judicial determination. It is only then that a court can sufficiently ascertain whether there is "law" to apply within the meaning of *Overton Park.*

*Id.* at 1332. The Supreme Court has recently concluded, however, that judicial review is precluded under section 701(a)(2) of the APA when the statute at issue is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985); and *Webster v. Doe,* —— U.S. ——, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988). In these rare instances, the Court determined that the statute must be interpreted as having committed the decision making to the agency's judgment absolutely. *Heckler,* 470 U.S. at 830, 105 S.Ct. at 1655.

More recently the Eighth Circuit Court in *Woodsmall v. Lyng* had an opportunity to decide whether its pragmatic approach was overturned by the Court's decision in *Cha-*

*ney,* but avoided deciding the issue. *Woodsmall,* 816 F.2d 1241, 1245. Instead the court concluded that under either approach the agency action at issue in *Woodsmall* was not subject to review. This court, however, finds that the pragmatic consideration approach was rejected by the Supreme Court in *Chaney* and more recently in *Webster* where again the Court stated:

> under § 701(a)(2), even when Congress has not affirmatively precluded judicial oversight, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."

*Webster,* 108 S.Ct. at 2052, (quoting *Chaney* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)).

█ After a careful review of the statutory framework, legislative history, and the implementing regulations for the CRP, the court finds that there are no meaningful standards by which a court can assess the agency's determination that "adequate assurances" do not exist for waiving the three year ownership rule. Congress has determined that the three year ownership rule is necessary to protect against persons acquiring land solely for the purpose of placing the land in the conservation reserve.[4] Congress further recognized certain exceptions to the three year ownership rule. As noted one of the exceptions authorizes the Secretary to waive the three year ownership rule if he determines that the land was acquired under circumstances that give adequate assurance that the land was not purchased for the purpose of placing it in the conservation acreage reserve program. 16 U.S.C. § 3835(a)(1)(C) (1988 Supp.). Congress, however, did not provide any criteria for determining whether adequate assurances existed. Hence, the court finds that the Secretary's delegation is very broad and that the court is left with no meaningful standard against which to assess the agency's decision. Consequently, the court holds that the Secretary's

---

**4.** S.R. No. 145, 99th Cong., 1st Sess., 306 (1985) *reprinted in* 1985 U.S.Code Cong. & Admin. News 1676, 1972.

decision regarding adequate assurances is not subject to judicial review because it is a matter committed to agency discretion by law.

■ This conclusion, however, does not preclude review of the assertion that the Secretary has neglected its statutory responsibilities by failing to promulgate adequate standards for determining whether adequate assurances exist for waiving the three year ownership rule. *Woodsmall v. Lyng,* 816 F.2d 1241, 1246 (8th Cir.1987); *See also State of Iowa ex rel. Miller v. Block,* 771 F.2d 347, n. 1 (8th Cir.1985) (15 U.S.C. § 714b(c), antiinjunctive statute does not preclude court from requiring Secretary to promulgate and implement regulations to fulfill Congress' intent). In the case at bar the State contends that the Secretary has completely refused to even examine the factual basis of the State's eligibility under the "adequate assurance" exception. The State further contends that the Secretary has decided to ignore the statutory exception to the three year ownership rule.

The State acquired its interest in the 101.8 acre tract and the 314.9 acre tract on November 16 and November 13, 1987, respectively. The State then made application to place both parcels in the conservation program on February 10, 1988. On reviewing the applications, the Secretary determined that none of the exceptions to the three year ownership rule applied to the facts and therefore denied inclusion of the land in the program. In a notice of disapproval for inclusion it states:

It has been determined that after October 1, 1985, there was sufficient information available about the Food Security Act of 1985 for the public to be aware of CRP; therefore, we have established that any land purchased after October 1, 1985, may have been acquired under circumstances that cannot give adequate assurance that the land was not acquired for the purpose of placing it in CRP.

The record is replete with such references. The Department of Agriculture has apparently taken the position that any transfer of title to lands which fit the definitions of "highly erodible" occurring after October 1, 1985, makes the transferred property ineligible for the program. The record would indicate that the Secretary has uniformly applied this "bright line test" and has found tracts eligible only where the property did not fit the "highly erodible" definition in use at the time of the transfer, or where the "transfer" was one of form rather than of substance. The North Dakota application has run aground on this "bright line test" shoal. The record indicates that "but for the date of acquisition" the State owned land would otherwise be eligible.

Where Congress delegates its authority to the Secretary of Agriculture to carry out a governmental program and authorizes the Secretary to determine whether there are adequate assurances that the land was not acquired for the purpose of placing it in the reserve program, the Secretary has a clear duty to promulgate regulations which carry out the intention of Congress. Based on the record in this case, the court finds that the Secretary's "bright line test" regarding acquisitions of property after October 1, 1985, does not further the goals of Congress. Therefore, the Secretary's reliance on the date of purchase only is arbitrary, capricious, and an abuse of discretion.

Based on the foregoing findings, it is the ORDER of the court that the case be remanded to the Secretary of Agriculture. The Secretary is directed to promulgate adequate regulations for purposes of implementing and carrying out section 3835(a)(1) of title 16 of the United States Code as intended by Congress with its enactment. Said regulations shall provide procedural fairness to those persons seeking to enroll in the conservation reserve program, including, but not necessarily limited to, a means by which the person may assert an exception to the three year ownership rule, and written notice of the Secretary's decision finding that no exception applies.