914 F.2d 1031
 STATE OF NORTH DAKOTA ex rel. BOARD OF UNIVERSITY AND SCHOOL
LANDS, Appellee,
v.
Clayton K. YEUTTER, U.S. Secretary of Agriculture; Milton
Hertz, Administrator of the Agricultural Stabilization and
Conservation Service; James M. Davis, Assistant Deputy
Administrator of the Agricultural Stabilization and
Conservation Service, Appellants.
STATE OF NORTH DAKOTA ex rel. BOARD OF UNIVERSITY AND SCHOOL
LANDS, Appellee,
v.
Clayton K. YEUTTER, U.S. Secretary of Agriculture; Milton
Hertz, Administrator of the Agricultural Stabilization and
Conservation Service; Thomas A. Vongarlem, Assistant Deputy
Administrator of the Agricultural Stabilization and
Conservation Service, Appellants.
STATE OF NORTH DAKOTA ex rel. BOARD OF UNIVERSITY AND SCHOOL
LANDS, Appellee/Cross-Appellant,
v.
Clayton K. YEUTTER, U.S. Secretary of Agriculture; Milton
Hertz, Administrator of the Agricultural Stabilization and
Conservation Service; James M. Davis, Assistant Deputy
Administrator of the Agricultural Stabilization and
Conservation Service, Appellants/Cross-Appellees.
STATE OF NORTH DAKOTA ex rel. BOARD OF UNIVERSITY AND SCHOOL
LANDS, Appellee/Cross-Appellant,
v.
Clayton K. YEUTTER, U.S. Secretary of Agriculture; Milton
Hertz, Administrator of the Agricultural Stabilization and
Conservation Service; Thomas A. Vongarlem, Assistant Deputy
Administrator of the Agricultural Stabilization and
Conservation Service, Appellants/Cross-Appellees.
 Nos. 89-5485, 89-5497.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1990.
Decided Sept. 12, 1990.
Rehearing and Rehearing En Banc
Denied Dec. 11, 1990.
 
 Constance A. Wynn, Washington, D.C., for appellants.
 Charles M. Carvell, Bismarck, N.D., for appellee.
 Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,* Senior District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 The Secretary of the United States Department of Agriculture appeals from a district court decision ordering him to promulgate procedural and substantive regulations implementing 16 U.S.C. Sec. 3835(a)(1). This section provides that land may not be enrolled in the Conservation Reserve Program (CRP) if it has changed ownership in the preceding three years, but allows the Secretary to waive the three-year ownership requirement if he determines the land was acquired under circumstances that give adequate assurance it was not acquired for the purpose of placing it in the CRP. The State of North Dakota cross-appeals, seeking reversal of the district court's holding that the Secretary's waiver determination is not subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. Secs. 701-706. We affirm this holding and accordingly deny the state's cross-appeal. We reverse the district court's decision insofar as it orders the Secretary to promulgate regulations implementing Sec. 3835(a)(1).
 
 I.
 
 2
 The CRP was established by the Food Security Act of 1985. Pub.L. No. 99-198, Secs. 1201, 1231-1236, 99 Stat. 1354, 1504-05, 1509-14 (codified as amended at 16 U.S.C. Secs. 3801, 3831-3836 (1988)). This program permits owners and operators of highly erodible cropland to submit offers for long-term contracts with the Secretary under which they agree to place land into soil-conserving uses in exchange for annual rental payments from the Secretary. One of the eligibility requirements for participation in the CRP is that the land must not have changed ownership in the three years prior to the start of the contract period. This three-year ownership requirement and its exceptions are set forth in Sec. 3835(a)(1):
 
 
 3
 (1) No contract shall be entered into under this subchapter concerning land with respect to which the ownership has changed in the 3-year period preceding the first year of the contract period unless--
 
 
 4
 (A) the new ownership was acquired by will or succession as a result of the death of the previous owner;
 
 
 5
 (B) the new ownership was acquired before January 1, 1985;
 
 
 6
 (C) the Secretary determines that the land was acquired under circumstances that give adequate assurance that such land was not acquired for the purpose of placing it in the program established by this subchapter; or
 
 
 7
 (D) the ownership change occurred due to foreclosure on the land and the owner of the land immediately before the foreclosure exercises a right of redemption from the mortgage holder in accordance with State law. (Emphasis added).
 
 
 8
 The dispute in this case centers on the third exception.
 
 
 9
 In November 1987, the State of North Dakota acquired title to two tracts of land through mortgage foreclosures. At the time the state commenced foreclosure proceedings in July 1986, the mortgage payments for the properties had been delinquent for four and five years respectively. On February 10, 1988, North Dakota submitted CRP applications for the two tracts with the appropriate county committees of the Agricultural Stabilization and Conservation Service.[1] The committees denied the applications, as did the reviewing authorities at each level of the administrative appeal process. The applications were rejected on the grounds that North Dakota had not owned the land for three years and did not qualify for a waiver of the three-year ownership requirement under Sec. 3835(a)(1)(C). In making the determination not to grant a waiver, the Secretary relied upon an administratively-developed standard under which it is presumed that land acquired after October 1, 1985 (and held for less than three years) was acquired for the purpose of placing it in the CRP because information about the program had been well publicized by that date.
 
 
 10
 North Dakota brought an action in the district court seeking review of the Secretary's final decision denying its CRP applications. The state requested (1) a declaratory judgment that the decision was arbitrary, capricious, and an abuse of discretion; and (2) an order requiring the Secretary to immediately place the state's land in the CRP. Although it held that the Secretary's waiver determination is unreviewable, the district court nevertheless proceeded to find that the Secretary's reliance on a date-of-acquisition standard is arbitrary, capricious, and an abuse of discretion. North Dakota ex rel. Bd. of Univ. & School Lands v. Yeutter, 711 F.Supp. 517, 520-21 (D.N.D.1989). The court then ordered that the case be remanded to the Secretary with directions to promulgate procedural and substantive regulations implementing Sec. 3835(a)(1). The court did not grant North Dakota's request for an order requiring enrollment of its land in the CRP.
 
 II.
 
 11
 There is a strong presumption that agency actions are reviewable under the APA. Woodsmall v. Lyng, 816 F.2d 1241, 1243 (8th Cir.1987). Notwithstanding this presumption, 5 U.S.C. Sec. 701(a) states that the APA's provisions for judicial review do not apply "to the extent that--(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." It is undisputed that the statutory provisions governing the CRP do not explicitly preclude judicial review of the Secretary's determination whether to waive the three-year ownership requirement. Thus, the threshold jurisdictional issue in this case is whether that determination falls within the Sec. 701(a)(2) exception to judicial review.
 
 
 12
 In its first discussion of Sec. 701(a)(2), the Supreme Court described it as "a very narrow exception ... applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). In an effort to implement Overton Park, this court followed an approach used by the District of Columbia Circuit, recognizing that " '[i]n practice, the determination of whether there is "law" to apply necessarily turns on pragmatic considerations as to whether an agency determination is the proper subject of judicial review.' " Tuepker v. Farmers Home Admin., 708 F.2d 1329, 1332 (8th Cir.1983) (quoting Natural Resources Defense Council, Inc. v. SEC, 606 F.2d 1031, 1043 (D.C.Cir.1979)). The Tuepker court explained this approach as follows:
 
 
 13
 In determining reviewability of an agency's actions, a court must look at the allegations raised in the complaint, together with the governing statutes and regulations, and determine: (1) whether the challenged agency action is of the type Congress intended be left to a reasonable exercise of agency expertise; and (2) whether the problem raised is one suitable for judicial determination. It is only then that a court can sufficiently ascertain whether there is 'law' to apply within the meaning of Overton Park.
 
 
 14
 Id. Subsequently, in Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985), the Supreme Court elaborated on the Sec. 701(a)(2) exception by explaining that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."
 
 
 15
 In Woodsmall, 816 F.2d at 1245, we concluded that "Chaney's emphasis on statutory language as the source of law to apply casts doubt on the 'pragmatic considerations' approach" adopted in Tuepker. We noted that "[t]he Chaney Court disparagingly referred to pragmatic considerations ... as amounting to 'an assessment of whether the interests at stake are important enough to justify intervention in the agencies' decisionmaking.' " Id. (quoting Chaney, 470 U.S. at 834, 105 S.Ct. at 1657). However, we left open the issue whether Chaney invalidated the Tuepker approach because the outcome in Woodsmall would have been the same under either Tuepker or an approach emphasizing the centrality of the statutory language. Id.
 
 
 16
 Our opinion in Woodsmall identified one potential basis for limiting the reach of Chaney. We observed that Chaney concerned an agency refusal to take enforcement action and that the Court concluded an agency decision not to take such action was presumptively unreviewable, in contrast to other agency decisions. Id. at 1244-45; Chaney, 470 U.S. at 831-35, 105 S.Ct. at 1655-58. Thus, we found that Chaney's "emphasis on statutory language arguably can be confined to the context of refusals to take enforcement action." Woodsmall, 816 F.2d at 1245.
 
 
 17
 This possible basis for limiting the applicability of the Chaney approach is no longer tenable in light of Webster v. Doe, 486 U.S. 592, 599-601, 108 S.Ct. 2047, 2051-53, 100 L.Ed.2d 632 (1988), where the Supreme Court found that a decision to discharge an employee of the Central Intelligence Agency is committed to agency discretion by the language and structure of Sec. 102(c) of the National Security Act (NSA). The Court reaffirmed that "under Sec. 701(a)(2), even when Congress has not affirmatively precluded judicial oversight, 'review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " Id. at 599-600, 108 S.Ct. at 2052 (quoting Chaney, 470 U.S. at 830, 105 S.Ct. at 1655). Webster cannot be read as confining this approach specifically to agency refusals to take enforcement action, or in general to contexts in which a presumption of nonreviewability would apply. The Court's description of the holding in Chaney did not characterize it as dependent upon such a presumption. See id. 486 U.S. at 600, 108 S.Ct. at 2052. It stated that "[b]oth Overton Park and Heckler [v. Chaney] emphasized that Sec. 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based." Id. (emphasis added). Like Webster, "Overton Park did not involve an agency's refusal to take requested enforcement action." Chaney, 470 U.S. at 831, 105 S.Ct. at 1655. Moreover, as was noted in the court of appeals opinion in the Webster case, the government conceded that the presumption of reviewability applied to the agency's discharge decision. Doe v. Casey, 796 F.2d 1508, 1517 & n. 29 (D.C.Cir.1986). We are therefore constrained to conclude, as the district court did, that Chaney and Webster together render the Tuepker "pragmatic considerations" approach invalid.[2]
 
 
 18
 Applying the Supreme Court's approach, we find that the Sec. 701(a)(2) exception to judicial review applies to the Secretary's waiver determination under Sec. 3835(a)(1)(C). The statute at issue in Webster allowed the termination of a CIA employee whenever the Director of the agency " 'shall deem such termination necessary or advisable in the interests of the United States' ..., not simply when the dismissal is necessary or advisable to those interests." Webster, 486 U.S. at 600, 108 S.Ct. at 2052 (emphasis added by Court) (quoting Sec. 102(c) of NSA). The Court concluded that "[t]his standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review." Id. Thus, the Webster Court found significance in the "distinction between the objective existence of certain conditions and the [agency's] determination that such conditions are present." Kreis v. Secretary of Air Force, 866 F.2d 1508, 1513 (D.C.Cir.1989). The language of Sec. 3835(a)(1)(C) draws the same type of distinction by providing for an exception from the three-year ownership requirement if "the Secretary determines that the land was acquired under circumstances that give adequate assurance that such land was not acquired for the purpose of placing it in the program established by this subchapter." Like the statute in Webster, this statutory standard "fairly exudes deference" to the Secretary. As the district court correctly observed, Sec. 3835(a)(1)(C) gives the Secretary extremely broad discretion and supplies no objective criteria for determining the existence of adequate assurance. We are simply unable to discern from the language of the statute any meaningful standard against which a court could judge the Secretary's exercise of his discretion to determine whether adequate assurance exists.
 
 
 19
 The statutory framework in which Sec. 3835(a)(1)(C) is embedded provides a further indication that implementation of the section is committed to the Secretary's discretion. A host of other provisions in the subchapter governing the CRP accord the Secretary broad discretion in his administration of various aspects of the program.[3] We likewise find nothing in either the legislative history of the CRP provisions or the regulations implementing the program that lessens the wide latitude given the Secretary under Sec. 3835(a)(1)(C). Accordingly, we conclude that the Sec. 3835(a)(1)(C) waiver determination is committed to agency discretion by law and therefore is not subject to judicial review under the APA.
 
 III.
 
 20
 We turn now to the second part of the district court's decision, which ordered the Secretary to promulgate procedural and substantive regulations implementing Sec. 3835(a)(1). As an initial matter, we note that the terms of the court's remand order apply to all four exceptions to the three-year ownership rule set forth in Sec. 3835(a)(1). See 711 F.Supp. at 521. However, North Dakota has not challenged the Secretary's implementation of Sec. 3835(a)(1)(A), (B) or (D), and there is nothing in the record before us that would support such a challenge. Accordingly, there is no basis in this case for the court's order insofar as it applies to these three exceptions.
 
 
 21
 After correctly holding that Sec. 701(a)(2) precludes judicial review of the Secretary's waiver determination in this case, the district court inexplicably proceeded to scrutinize the Secretary's use of a date-of-acquisition standard in making that determination. The court had no jurisdiction to conduct such a review. It is self-evident that Sec. 701(a)(2) necessarily deprives a court of jurisdiction to review the sufficiency of the reasons underlying a particular agency action that is committed to the agency's discretion by law.[4] North Dakota does not attempt to argue otherwise. Thus, the district court erred to the extent it purported to base its order on an evaluation of the merits of the Secretary's waiver determination in this case.[5]
 
 
 22
 Although Sec. 701(a)(2) precludes judicial review of the Secretary's waiver determination, we have jurisdiction to review the legal question whether the Secretary must promulgate additional regulations as ordered by the district court. See Woodsmall, 816 F.2d at 1246. Our review of this question discloses no grounds warranting the court's order.
 
 
 23
 The Secretary has already promulgated regulations establishing uniform reconsideration and appeal procedures for parties who are dissatisfied with an administrative determination rendered under the CRP, including determinations made with respect to the denial of participation in the program. See 7 C.F.R. Secs. 704.27, 780.1-780.13 (1990); see also Esch v. Yeutter, 876 F.2d 976, 986-87, 992 (D.C.Cir.1989) (summarizing procedures). These regulations satisfy 16 U.S.C. Sec. 3843(a), which provides that "[t]he Secretary shall establish, by regulation, an appeal procedure under which a person who is adversely affected by any determination made under this chapter may seek review of such determination." North Dakota does not allege that the established procedures are in any way deficient or that the Secretary failed to comply with them. Despite the absence of such allegations, the district court apparently found that the existing regulations do not "provide procedural fairness," but yet did not identify any such shortcomings in the regulations. 711 F.Supp. at 521.[6] The Supreme Court has emphasized that the formulation of administrative procedures is "basically to be left within the discretion of the agencies to which Congress ha[s] confided the responsibility for substantive judgments." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). We find the Secretary has not exceeded the bounds of this discretion in formulating the existing reconsideration and appeal procedures. These uniform procedures are far from the sort of procedural vacuum that would warrant judicial intervention to compel the promulgation of additional regulations. See Allison v. Block, 723 F.2d 631, 633-36 (8th Cir.1983).
 
 
 24
 The district court found that the Secretary has a "clear duty" to promulgate regulations establishing substantive standards for the Sec. 3835(a)(1)(C) waiver determination. 711 F.Supp. at 521. We cannot agree. Whether such standards should be developed through rulemaking or case-by-case adjudication is a choice " 'that lies primarily in the informed discretion of the administrative agency.' " NLRB v. Bell Aerospace Co., 416 U.S. 267, 293, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974) (quoting SEC v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947)). The Supreme Court has indicated that an agency's judgment in exercising this discretion "is entitled to great weight." Id. 416 U.S. at 294, 94 S.Ct. at 1771. Nevertheless, there may be situations where an agency's "reliance on adjudication would amount to an abuse of discretion or a violation" of the governing statutes. Id. We find neither circumstance present here.
 
 
 25
 The Secretary's decision to rely on case-by-case adjudication in implementing Sec. 3835(a)(1)(C) does not violate any express provision of the statutes governing the CRP. The language of the section authorizing the Secretary to promulgate regulations is permissive rather than mandatory. It states that prior to a specified date, "the Secretary shall issue such regulations as the Secretary determines are necessary to carry out" the program. 16 U.S.C. Sec. 3844 (emphasis added). Furthermore, the use of adjudication to develop standards does not violate any implicit obligation of "[g]ood faith consideration" contained in Sec. 3835(a)(1)(C). Allison, 723 F.2d at 636. Although such an obligation could be said to necessitate "the existence of some substantive standards," id., it would not require the Secretary to develop those standards through rulemaking even if he had failed altogether to implement the statute. Id. at 637-38 (recognizing Secretary could choose to develop necessary substantive criteria for loan deferral program through either adjudication or rulemaking even though Secretary had previously refused completely to implement program); see also United States v. Markgraf, 736 F.2d 1179, 1185 (7th Cir.1984) (finding court could not "dictate the process through which the Secretary must act to articulate standards" for loan deferral program), cert. dismissed, 469 U.S. 1199, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985).
 
 
 26
 Finally, we cannot say that the Secretary has abused his discretion in choosing adjudication rather than rulemaking to develop substantive criteria guiding the Sec. 3835(a)(1)(C) waiver determination. Because the particular circumstances under which farmland is acquired can vary so greatly from case to case, we believe "[i]t is doubtful whether any generalized standard could be framed which would have more than marginal utility." NLRB v. Bell, 416 U.S. at 294, 94 S.Ct. at 1771. The existence of "adequate assurance" for purposes of Sec. 3835(a)(1)(C) is a problem that can justifiably be characterized as "so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule." Chenery, 332 U.S. at 203, 67 S.Ct. at 1580. In such a situation, "the agency must retain power to deal with the problem[ ] on a case-to-case basis if the administrative process is to be effective." Id.
 
 
 27
 Contrary to the apparent view of the district court, we do not believe that the Secretary's development and use of a date-of-acquisition standard amounts to a refusal to engage in reasoned decisionmaking. The application and further elucidation of such a standard on a case-by-case basis does not constitute "complete abdication of the Secretary's responsibilities" under Sec. 3835(a)(1)(C), Allison, 723 F.2d at 638, which would warrant a conclusion that the Secretary has abused his discretion in relying on adjudication. Although the district court characterized the Secretary's standard as a "bright line test," 711 F.Supp. at 521, the record bears out the Secretary's position that it operates as a rebuttable presumption. The record discloses instances where the Secretary has found adequate assurance that land which changed ownership after October 1, 1985 was not acquired for the purpose of placing it in the CRP.[7] In our view, the fact that a court could disagree with the strength of the presumption applied by the Secretary in Sec. 3835(a)(1)(C) waiver adjudications does not provide a sufficient ground for ordering him to engage in rulemaking.
 
 IV.
 
 28
 For the foregoing reasons, we affirm the district court's holding that the Secretary's Sec. 3835(a)(1)(C) waiver determination is not subject to judicial review under the APA and deny North Dakota's cross-appeal. We reverse that part of the court's decision ordering the Secretary to promulgate regulations implementing Sec. 3835(a)(1).
 
 
 29
 LARSON, Senior District Judge, concurring and dissenting in part.
 
 
 30
 I agree with the majority that the Secretary may properly decide to implement section 3835(a) of the Conservation Reserve Program (CRP) through adjudication on a case by case basis, and I join in the court's opinion insofar as it reverses the district court's order requiring the Secretary to promulgate rules to implement this section. I respectfully dissent, however, from the majority's holding that the court lacks jurisdiction to review the agency's adjudicatory action. In my view, the court can and should rule on whether the Secretary acted arbitrarily and capriciously in refusing to allow North Dakota to participate in CRP based upon an internal agency presumption or "bright line test" that land acquired after October 1, 1985, was acquired for the purpose of placing it in the CRP.
 
 
 31
 The majority reaches its conclusion that the court lacks jurisdiction based upon a narrow reading of the statutory language contained in section 3835(a), which, according to the majority, provides the court with "no law to apply." I am not as convinced as the majority that the Supreme Court's decision in Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), restricts our inquiry concerning the review-ability of agency action to statutory language alone. Both Webster and its predecessor, Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1983), involved areas where courts traditionally have been reluctant to intervene: national security in Webster and traditional prosecutorial discretion in Chaney. See 486 U.S. at 600-01, 108 S.Ct. at 2052-53; 470 U.S. at 831-32, 105 S.Ct. at 1655-56.
 
 
 32
 While I agree that the starting point for determining the application of section 702(a)(2) should be the specific language and overall structure of the legislation, I am hesitant to exclude consideration of other factors which may well assist the court in determining whether the question presented by the plaintiff is one which "is committed to agency discretion by law." 5 U.S.C. Sec. 701(a)(2). As Justice O'Connor noted in her concurring opinion in Webster, "I do not understand the Court to say that the exception in Sec. 702(a)(2) is necessarily or fully defined by reference to statutes 'drawn in such broad terms that in a given case there is no law to apply.' " Webster, 486 U.S. at 605, 108 S.Ct. at 2055 (O'Connor, J. concurring in part and dissenting in part) (emphasis supplied).
 
 
 33
 Moreover, even assuming the test of reviewability is confined to the specific statutory language, I believe section 3835(a) provides a sufficient standard under which to review agency action in this case. The requirement that individuals own land for at least three years was designed to "prevent the type of speculator/investor abuse which has occasionally cropped up under previous programs." H.R.Rep. No. 99-271, Part 1, 99th Cong. 1st Sess. 82 (1985), reprinted in 1985 U.S.Code Cong. & Admin.News 1103, 1186.
 
 
 34
 Section 3835(a)(1) sets out the rule that "[n]o contract shall be entered into" with landowners who have held their land less than three years, unless (A) the ownership was acquired by will or succession as a result of the death of the previous owner; (B) the ownership was acquired prior to the effective date of the CRP program; (C) the Secretary "determines that the land was acquired under circumstances that give adequate assurance that such land was not acquired for the purpose of placing it in the program;" or (D) there was a foreclosure and the prior owner exercised his or her right of redemption under state law. Section 3835(a)(2) further provides that (A) a new owner is entitled to continue an agreement already in force (the contract runs with the land), and (B) a farmer who rents land may participate so long as the farmer has control over the land for the contract period and has farmed it for at least three years or prior to the effective date of the CRP. See 16 U.S.C. Sec. 3835(a).
 
 
 35
 The majority concludes that the term "adequate assurance" in this context provides no law to apply. I disagree. Courts have not hesitated to hold, under other statutory schemes, that an agency's determination of "satisfactory assurances" is subject to judicial review. See, e.g., Johnston v. Davis, 698 F.2d 1088, 1093 (10th Cir.1983) (and cases cited therein). That the statutory scheme vests the Secretary with broad discretion in determining eligibility for the CRP program, and that courts should defer to that discretion, does not render the Secretary's administration of the program unreviewable. See generally Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670-71, 106 S.Ct. 2133, 2135-36, 90 L.Ed.2d 623 (1986) (noting strong presumption that Congress intends judicial review of administrative action).
 
 
 36
 In this case, the State of North Dakota contends the Secretary has abdicated his statutory responsibility under section 3835(a)(1)(C) by adopting a "bright line test" that land purchased after October 1, 1985, must be held for three years in order to participate in the program. The district court agreed that the Secretary had adopted such a test, and had uniformly applied it to find "adequate assurances" lacking except in two very narrow circumstances: when the land did not fit the definition of "erodible" at the time of acquisition or where the transfer was one of form rather than substance.
 
 
 37
 The state argues the Secretary's position is arbitrary because, rather than examine the specific facts regarding its acquisition of the lands in question, the Secretary mechanically applied the "bright line test." The record lends some support to this contention. It is undisputed that the state initially became involved with the land through the Bank of North Dakota, which lent money to two farm families in connection with a state/Farmers Home Administration loan program. The loans were made in 1978, seven years prior to the establishment of the CRP, and were secured in part by a mortgage on the families' farm property.
 
 
 38
 The farmers were four and five years delinquent on their payments when the state determined that all other options had failed and foreclosure was required. Foreclosure went forward, the farmers failed to redeem their property during the one year redemption period allowed by state law, and the state received title to the lands in November, 1987. In 1988, the state applied for participation in the CRP. One of the farmers had participated in CRP prior to the foreclosure, but the contract was cancelled during the redemption period, so the state could not continue the contract as a successor in interest.
 
 
 39
 In the statement of undisputed material facts filed by the Secretary in connection with the Secretary's motion for summary judgment,[1] the Secretary conceded that the state's land qualifies for inclusion in the CRP and that the state's applications were denied "because the State had owned the property it sought to enroll for less than three years." The Secretary's notice of disapproval offered the following rationale:
 
 
 40
 It has been determined that after October 1, 1985, there was sufficient information available about the Food Security Act of 1985 for the public to be aware of CRP; therefore, we have established that any land purchased after October 1, 1985, may have been acquired under circumstances that cannot give adequate assurance that the land was not acquired for the purpose of placing it in CRP (emphasis supplied).
 
 
 41
 Because the district court held it lacked jurisdiction, it did not reach the question of whether the agency acted arbitrarily in failing to consider the specific facts before it or in failing to explain why "adequate assurances" were nonetheless lacking. I would reverse and remand to give the district court the opportunity to address this question.
 
 
 
 *
 THE HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Secretary has delegated administration of the CRP to the ASCS. See 7 C.F.R. Secs. 2.65(a)(40), 704.3(a) (1990)
 
 
 [2]
 It appears the District of Columbia Circuit has also come to the conclusion that the "pragmatic considerations" approach is no longer valid. See United States Information Agency v. Krc, 905 F.2d 389, 396-97 (D.C.Cir.1990) (stating that "[a]bove all, Sec. 701(a)(2) requires us to examine carefully the statute on which the claim of illegal agency conduct is based," and then limiting analysis to the relevant statutory provisions); see also Sierra Club v. Yeutter, 911 F.2d 1405 1990 Westlaw 114253 (10th Cir. Aug. 13, 1990) (Webster "stands for the proposition that where a statute provides 'no substantive standards on which a court could base its review,' ... then the agency action is unreviewable") (quoting Webster, 486 U.S. at 600, 108 S.Ct. at 2052)
 
 
 [3]
 See 16 U.S.C. Sec. 3801(a)(6), (a)(7)(A)(ii), (a)(7)(B); Sec. 3831(c)(1)(A), (c)(2), (d); Sec. 3832(a)(5)(A)-(B), (a)(6)(B), (a)(7), (a)(10); Sec. 3833(1); Sec. 3834(a)(2)(B), (b), (c)(1)-(2), (d)(2)(C), (d)(3), (e), (f)(2)(A)(ii); Sec. 3835(c), (d)(1); Sec. 3836(b)
 
 
 [4]
 The patent nature of this proposition is reflected in the Webster, Chaney and Woodsmall decisions, which did not examine the merits of the particular agency action at issue after finding it came within the Sec. 701(a)(2) exception to judicial review
 
 
 [5]
 After holding Sec. 701(a)(2) applies, the court did observe the consequent limits on its jurisdiction to grant North Dakota relief by denying the state's request for an order requiring the Secretary to enroll its land in the CRP
 
 
 [6]
 The only specific procedure required by the court's remand order is "written notice of the Secretary's decision finding that no exception applies." 711 F.Supp. at 521. However, the court's opinion itself demonstrates that the Secretary already provides such notice. See id. (quoting "notice of disapproval" sent to state); see also 7 C.F.R. Sec. 780.9(a) (reviewing authority must provide party with written notification of its determination)
 
 
 [7]
 For example, the Secretary has found the requisite adequate assurance with respect to land acquired after October 1, 1985 in the following cases: (1) the purchaser had a controlling interest in the entity from which the land was acquired; (2) at the time of purchase, the land was technically ineligible for the CRP because it did not meet erodibility guidelines; and (3) a lending institution returned the title to foreclosed land to the original owner. Joint Appendix at 35
 
 
 [1]
 North Dakota Local Rule 5 requires parties to submit, in addition to brief in support of a motion for summary judgment, a short and concise statement of the material facts as to which there is no genuine issue to be tried